# Tide Water Pipe Co., Appellant, *v.* Bell.

*Equity—Forcible taking of possession—Restoration of status—Jurisdiction to determine rights in the property—Imposition of costs.*

1. One who attempts to take the law into his own hands, pending a settlement of the respective rights of the contesting parties, may lose much, but can never gain anything.

2. Ordinarily, where there is a dispute regarding property, and one of the claimants takes forcible possession from the other, on bill in equity filed, the court should at least restore the original status, and charge the wrongdoer with all costs, expenses and damages resulting from his wrongful conduct, leaving the parties to have their rights determined at law; and this should be done although the court is of opinion that the wrongdoer has title to the property in dispute.

3. Under such circumstances, however, a court of equity, should, at the request of the innocent party, proceed to determine the question of title also, even though, but for the other's wrongful conduct, that question would have been cognizable in a court of law only.

*Equity—Jurisdiction—Proceedings in limine—Practice, equity —Waiver.*

4. A defendant who challenges the jurisdiction of equity must explicitly raise this issue by answer or demurrer, and have it decided in limine; if he fails in either respect, the right of trial by jury will be deemed waived by both parties.

*Easements—Right-of-way—Open and notorious possession—Sale of property—Sale for taxes—Seated or unseated land—Acts of April 3, 1804, P. L. 517, and April 29, 1844, P. L. 486.*

5. A right-of-way which is open, notorious, continuous and permanent is not affected by either a public or private sale of the property over which it passes.

6. This rule applies to a sale for taxes, whether the land burdened by the right-of-way is seated or unseated, if the taxes were assessed only against the land so burdened, and if also the right-of-way was granted, and its owner in open, notorious, continuous and permanent possession of it, before their assessment.

Nothing in the Acts of April 3, 1804, P. L. 517, and April 29, 1844, P. L. 486, compels an opposite conclusion.

*Contract—Name—Conflict between name and language of a contract.*

7. Where a conflict exists between a name attempted to be applied to a particular contract, and the language of the contract itself, the name will be rejected and the agreement enforced as written.

8. Where two things are of the same nature, and influence a property in exactly the same way and to the same extent, the law will recognize no difference in their legal incidents, as affecting that property, merely because they have different names, or one has no designation whatever.

*Equity—Accounting—Damages—Final decree—Practice, equity.*

9. Where plaintiff seeks in equity a decree sustaining his right to property forcibly taken from him, an accounting for the resulting damages should not be had until after final decree determining defendant's liability for them.

Argued February 18, 1924. Appeal, No. 103, Jan. T., 1924, by plaintiff, from decree of C. P. Schuylkill Co., Jan. T., 1921, No. 1, dismissing bill in equity, in case of Tide Water Pipe Co., Ltd., v. James J. Bell. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Reversed.

Bill for injunction. Before KOCH, trial judge.

The opinion of the Supreme Court states the facts.

The trial judge filed an opinion and decree making perpetual the injunction: 19 Schuylkill Leg. Rec. 173.

Exceptions to adjudication sustained and bill dismissed in opinion by BERGER, J., to which KOCH, J., filed dissenting opinions: 20 Schuylkill Leg. Rec. 60. Plaintiff appealed.

*Error assigned* was, inter alia, decree, quoting it.

*Ruby R. Vale,* with him *Don M. Larrabee* and *George W. Ryon,* for appellant.—On bill of complainant in possession and showing prima facie title, a defendant, forcibly seeking possession, may be restrained from admitted acts of violence destructive of property and in

breach of the peace; and this, regardless of the merits of the controversy or of title: Easton Pass. Ry. v. Easton, 133 Pa. 505; Freeland v. Oil Co., 189 Pa. 54; Cornwell v. Sparks, 248 Pa. 109; Cooke v. Boynton, 135 Pa. 102; Penna. Co. v. R. R., 204 Pa. 356; Conestoga Turnpike v. Lancaster, 151 Pa. 543; Baptist Congregation v. Scannell, 3 Grant 48; Earley's App., 121 Pa. 496.

Having jurisdiction to restrain defendant's acts in breach of the peace, the court may give complete relief by deciding (a) the incidental question of title; and (b) by awarding damages and appointing a master for such purpose: Wilhem's App., 79 Pa. 120; Maley v. R. R., 258 Pa. 73; Clouser v. Tressler, 16 Pa. Dist. R. 605; Com. v. Rush, 14 Pa. 186; Wilson v. Cather, 214 Pa. 3.

Complainant may be awarded damages and a master may be appointed for their assessment: Com. v. Archbald, 195 Pa. 317; Walters v. McElroy, 151 Pa. 549.

Complainant's right of way is an incorporeal easement appurtenant and not an "estate in land," even though the dominant and servient estates are separated by land in the ownership of others than the grantee or his assigns: Clements v. Phila. Co., 184 Pa. 28; Anania v. Serenta, 275 Pa. 474; Riefler v. Water Power Co., 232 Pa. 282.

Complainant's right-of-way was not divested by a tax sale of the land over which the right-of-way was granted: Hall v. McCaughey, 51 Pa. 43; Irwin v. Bank, 1 Pa. 349; Wissler v. Hershey, 23 Pa. 333; Overdeer v. Updegraff, 69 Pa. 110; Zell v. Society, 119 Pa. 390; Held v. McBride, 3 Pa. Superior Ct. 155; Eby v. Elder, 122 Pa. 342; O'Brien's App., 11 W. N. C. 229; Hettrick v. Eby, 62 Pa. Superior Ct. 21; Casey v. Canning, 17 Pa. Dist. R. 386; Grace M. E. Church v. Dobbins, 153 Pa. 294.

*John F. Whalen* and *James J. Bell,* with them *M. A. Kilker, M. M. Burke* and *Benjamin M. Golder,* for appellee.—This court has no jurisdiction (a) to try defendant's title to land, (b) declare it void, (c) where the

right of complainant is not clear, or (d) the plaintiff's hands are unclean: Kramer v. Goodlander, 10 W. N. C. 469; Penna. Coal & Coke Co. v. Jones, 30 Pa. Superior Ct. 358; Vitagraph v. Swaab, 248 Pa. 478; Wilson v. Berg, 88 Pa. 167; Glendon Iron Co. v. Uhler, 75 Pa. 467; Jenkins v. Fowler, 24 Pa. 308; New Castle v. Raney, 130 Pa. 546; Gorman v. McDermott, 42 Pa. Superior Ct. 516.

The court of equity cannot retain jurisdiction and decide a question of title where the question of title is raised by the pleadings, and the other rights claimed are merely incidental to it.

Equity will not interfere by injunction to protect a right-of-way that is not clear: Rhea v. Forsythe, 37 Pa. 503; Mowday v. Moore, 133 Pa. 598; Gorman v. McDermott, 42 Pa. Superior Ct. 516; Penna. Coal & Coke Co. v. Jones, 30 Pa. Superior Ct. 358.

The right to construct a pipe line for the transportation of petroleum is an easement, but by whatever name called, whether a license, a right, or a right prendre, is an easement in gross and the grant to B. F. Warren is personal to him and cannot be transmitted nor assigned, notwithstanding the express terms of the deed is to "his heirs and assigns": Tinicum Fishing Co. v. Carter, 61 Pa. 21; Call v. Spring, 2 Watts, 390; Fager v. Campbell, 5 Watts 287.

Appurtenant easements are only relieved from the effect of a tax sale upon the theory that they are taxed in the dominant estate, and where they cannot be so taxed, they must be taken to be taxed in the servient estate unless separately assessed and taxed.

In the instant case, it was not shown that the appellant paid any taxes anywhere, and, since no presumption of such payment arises from its duty to pay taxes, it may be said that, so far as the record of the case goes, appellant paid no taxes anywhere on anything: Ankeny v. Albright, 20 Pa. 157.

OPINION BY MR. JUSTICE SIMPSON, March 24, 1924:

By an agreement, dated August 26, 1881, Thomas Sieger and Mary Ann Sieger, his wife, and Sarah A. Bailey, granted to "B. F. Warren, his heirs and assigns, a right-of-way upon and through [our] lands lying in Schuylkill County, State of Pennsylvania, for the purpose of constructing, from time to time, one or more lines of iron pipes for the transportation of petroleum, in such manner and with such accompanying telegraph and other facilities as the grantee may deem necessary......
Provided, that said pipe or pipes shall be so laid as not to interfere with the usual cultivation of the premises, nor with any buildings thereon." Mr. and Mrs. Sieger duly acknowledged the agreement on the day of its date, the next day it was acknowledged for Sarah A. Bailey, by one of the subscribing witnesses, and it was recorded in the office of the recorder of deeds of Schuylkill County, on February 3, 1882; but, through some mistake in that office, the acknowledgment of Mr. and Mrs. Sieger, was not copied on the record. B. F. Warren was in fact agent and trustee for the Tide Water Pipe Company, Limited, the plaintiff herein, a limited partnership association, organized under the Act of June 2, 1874, P. L. 271; and, on November 11, 1902, he executed a declaration of trust to that effect.

Plaintiff, under the authority stated, constructed pipe lines for the conveyance of oil, and also telegraph and telephone lines, across the property referred to (but not particularly described in the agreement), the first of them being completed in 1882; and since then it has been using those lines continuously, for the purposes for which they were constructed. The oil transported in the pipe lines comes from wells in states west and southwest of Pennsylvania, traverses the length of this Commonwealth, and is finally delivered at seaboard, in Bayonne, New Jersey.

The property was farm land, but was on the list of unseated land, and was sold to defendant for $187.40, at a

tax sale, held on June 10, 1918. The unpaid taxes, for which the sale was had, were assessed long after the foregoing grant to B. F. Warren and the occupancy by plaintiff, but neither of their names was mentioned in the proceedings, although the fact of plaintiff's use of the strip of land, occupied by the several lines, was plainly visible to every one.

After defendant purchased the property at the tax sale, he did nothing until the two years allowed for redemption had expired; but almost immediately thereafter informed plaintiff that it must pay him $50,000, if it wished to continue using the right-of-way. This sum he subsequently increased to $100,000, because his first demand had not been promptly met, and, this also meeting a like fate, he increased the amount to $150,000, and still later notified plaintiff that $100 per day would be added for each day's delay in making payment. These exorbitant demands not having been complied with, he took forcible possession of a part of the right-of-way, dug the soil from around and under the pipe-lines, gave notice to the effect that if his exactions were not met, he would break those lines,—which would have caused the loss of immense quantities of oil,—and that any one who attempted to repair them would be shot.

Plaintiff thereupon was compelled, for fear of injury to life and damage to property, to cease transporting oil for the time being, and filed the present bill in equity. A preliminary injunction having been granted, defendant brought an action of ejectment against plaintiff, to recover possession of the property. Later a trial of the equity case was had before one of the judges of the court below, who reported that the injunction should be made permanent; defendant filed 103 exceptions, a few of which were sustained by the majority of the court, solely because it was of the opinion that defendant obtained a good title at the tax sale, which divested plaintiff's title to the right-of-way (the trial judge dissenting as to these

conclusions), and a decree dismissing the bill was therefore entered. This appeal by plaintiff followed.

From the foregoing statement of undisputed facts, it is clear that a permanent injunction should have been granted, entirely aside from the question as to whether or not plaintiff's title to the right-of-way was divested by the tax sale. It was in possession, as defendant well knew, his action of ejectment being an express recognition of this fact. Evidently he became tired of such orderly and proper procedure (which should have appealed to him, not only as a citizen, but also as a member of the bar, whose life should be pledged to an observance of the laws, and to the avoidance of everything which might lead to a breach of the peace), for, as stated, he not only took forcible and wrongful possession of part of plaintiff's pipe-lines, but he also stated that any one who interfered with his proposed action would be shot. Under such circumstances, the court below could not properly have done less than grant an injunction, pending the determination of the rights of the parties in the outstanding action of ejectment, charge defendant with all the costs of the present suit, with the expense of restoring the status as it existed prior to his wrongful conduct, and with all the damages resulting therefrom: Easton Pass. Ry. Co. v. City of Easton, 133 Pa. 505; Cooke v. Boynton, 135 Pa. 102; Fredericks v. Huber, 180 Pa. 572. We would ourselves enter such a decree on the present appeal, had we not reached the conclusion that plaintiff's title to the right-of-way was not affected by the treasurer's sale for taxes. It cannot be too emphatically stated, that every one who acts as defendant has done, or who otherwise attempts to take the law into his own hands, may lose much, but can never gain anything.

Being of opinion that plaintiff's title to the right-of-way has not been lost, we may, in order to round out the whole circle of controversy between the parties (McGowin v. Remington, 12 Pa. 56, 63; Hurst v. Brennen

(No. 1), 239 Pa. 216), so decree in this case; even though, but for defendant's wrongdoing, the question of title would have been cognizable only in a court of law (Wilhelm's App., 79 Pa. 120; Pennsylvania Co. v. Ohio River Junction R. R. Co., 204 Pa. 356, 367); and for the further reason that, by the Act of June 7, 1907, P. L. 440, a defendant, who challenges the jurisdiction in equity, must explicitly raise this issue by demurrer or answer, and have it decided in limine before a trial on the merits. If he fails in either respect,—and here he has done so in both, the request to have this question tried at law not having been made until the case came on for final hearing,—"the right of trial by jury shall be deemed to have been waived by both parties": Wright v. Barber, 270 Pa. 186; Norristown v. Reading Transit & Light Co., 277 Pa. 459.

We are not now concerned with the record upon which defendant's title is founded, and do not propose to consider it; but, assuming it to be sufficient to sustain the deed to him, will only determine whether or not plaintiff's title to its right-of-way was destroyed by the treasurer's sale. The argument on this point has been carried far afield, and much ingenuity and learning has been displayed, both in the briefs and oral arguments, yet, as the majority below correctly states, "the controlling legal questions......are few."

In Nauman v. Treen Box Co., 280 Pa. 97, we reiterated the principle, long recognized in this State, that a right-of-way which is open, notorious, permanent and continuous, is not affected by either a private or public sale of the property over which it passes. In the instant case, the court below has found that "plaintiff's pipeline was so operated across the Bailey tract, as to furnish notice......that a right-of-way of some sort was in use over the tract of land, and that was the condition of the property for a long time prior to and on the day of the treasurer's sale"; that is to say, the right-of-way was open, notorious, permanent and continuous. Hence, the

rule stated should be applied in this proceeding, unless it should not include tax sales of unseated lands, or is limited, as the majority of the court below seems to think, to easements, strictly so called.

Whether or not this right-of-way is an easement is a matter of dispute, both appellant and appellee disagreeing with the court below on the point. Plaintiff claims it is an easement appurtenant, the dominant tenement being the nearest pumping station in an adjoining county. Defendant disputes this contention, apparently upon the untenable ground (Anania v. Serenta, 275 Pa. 474) that the dominant and servient tenements must be contiguous. The majority of the court below also antagonizes plaintiff's claim on this point, because it "implies the existence of a dominant and servient estate, which essential is lacking in the instant case"; but upon what basis it is supposed to be lacking is not stated.

Defendant contends that the right-of-way is an easement in gross, which is not assignable, and hence Warren's attempt to transfer it to plaintiff was of no validity. With this both the majority and minority below disagree, "because the words of its creation made it both assignable and inheritable, and thus extended its life beyond the grantees." In one part of the majority opinion it would seem as if those judges thought it should be considered a right-of-way in gross, because it "has neither of its termini upon the premises of the owner, and [as alleged] is not appurtenant to any estate." The authority from which this conclusion is drawn (19 C. J. 867) also states, however, that this "is a mere personal right and is neither assignable nor inheritable, nor can it be made so by any terms in the grant." The court below should itself have rejected this claim, therefore, for the reason given by it when considering defendant's contention that the right-of-way was an easement in gross. It may be said, as to both of these claims, that, in this State, where a conflict exists between a name attempted to be applied to a particular

contract, and the language of the contract itself, we reject the name as inapplicable and do not eliminate words from the contract. In the present instance, the grant was to "B. F. Warren, his heirs and assigns," and must be interpreted to mean just what it says.

The majority below finally concludes that the right-of-way is not an easement at all, but is an unnamed "interest or estate in land, in the nature of an easement, but subordinate to the fee." In one sense this is of course true, as it is true also of every incorporeal hereditament, for a right-of-way is "the subject of property, which is inheritable and not tangible or visible," and is one of the ten kinds of incorporeal hereditaments expressly named in 2 Blackstone's Commentaries 20. It is unnecessary, however, for the reason hereinafter expressed, to pursue this curious difference of opinion further.

As we pointed out in Nauman v. Treen Box Co., supra, the principle being considered has become a rule of property, to which the courts should strictly adhere, unless it is altered by legislation. It is clearly formulated in Grace Methodist Episcopal Church v. Dobbins, 153 Pa. 294, 297, as follows: "The law on this subject is settled beyond question. Where an owner of land subjects part of it to an open, visible, permanent and continuous *service* or easement, in favor of another part, and then aliens either, the purchaser takes subject to the burden or the benefit as the case may be;" and, as thus expressed, it has been quoted and followed in many subsequent cases. As shown thereby, it refers to an "open, visible, permanent and continuous service [as well as] ......easement." The former word is defined in Rawle's Third Revision of Bouvier's Law Dictionary as "In civil law, a servitude," and "servitude," as "In civil law, the subjection of one person to another person, or of a person to a thing, or of a thing to a person, or of a thing to a thing." Applying these definitions to the foregoing quotation, it is clear that the purchaser of

land burdened with "open, visible, continuous and permanent," pipe, telegraph and telephone lines, takes title subject to the burden, whether those lines are easements appurtenant, as plaintiff contends; or incorporeal "interests or estates in land, in the nature of easements, but subordinate to the fee," as the majority of the court below concludes; or are mere servitudes, being "the subjection......of a thing to a person, or of a thing to a thing." We should reach the same conclusion in any event, for where two things are of the same nature, and influence a property in exactly the same way and to the same extent, the law will recognize no difference in their legal incidents, as affecting that property, merely because they have different names, or one has no designation whatever.

The fact that the property burdened with the right-of-way was sold at a judicial sale, does not affect the matter. In Kieffer v. Imhoff, 26 Pa. 438, 445, it is said: "If these deeds had been the acts of the owner himself, they would not change the qualities previously attached by him to the respective tenements [although not specified in the deeds]. There is still greater reason for holding that the sheriff's deeds cannot produce such a change in the disposition of the property." In Cannon v. Boyd, 73 Pa. 179, and Richmond v. Bennett, 205 Pa. 470, properties were sold at sheriff's sale, upon foreclosures of mortgages, and we held that the sheriff's vendees took subject to the servitude of certain alleys, although they were laid out after the mortgages were given and recorded, and the fact of their existence was not mentioned in the sheriff's deeds. The same conclusion was reached in Zell v. Universalist Society, 119 Pa. 390, where the property was sold at an orphans' court sale for the payment of debts, the proceedings and the deed being silent as to the existence of the easement.

These cases have been repeatedly followed, perhaps our last decision sustaining them being Leininger v. Goodman, 277 Pa. 75. It remains, therefore, so far as

this question is concerned, to determine whether or not the rule is inapplicable, where, as here, title has been acquired at a treasurer's sale of unseated land, for taxes which accrued long after the right of way was granted, and was openly, visibly, permanently and continuously used. It should be noted that the cases bearing on this question are not said to be limited to private, sheriff's or orphans' court sales, but embrace all sales, *"public* or private" (Penna. R. R. Co. v. Jones, 50 Pa. 417), the former of which would naturally include tax sales.

The exact question under consideration has been frequently determined by other courts of last resort. Their decisions are not harmonious, but, as stated in Am. & Eng. Annotated Cases, 1916 C, page 638, in a note to Tax Lien Co. v. Schultze, 213 N. Y. 9 (itself a strong case for the position that the right-of-way is not lost), "The more prevalent rule seems to be that a sale of land for taxes does not extinguish a private easement to which the land is subject." This appears to us to be a correct conclusion, except in those cases where it conflicts with a statute, as it did in Hanson v. Carr, 66 Wash. 81, where an act of assembly provided that the tax "lien shall have priority to and shall be fully paid and satisfied before any recognizance, mortgage, judgment, debt, obligation or responsibility, to or with which real estate may become charged or liable."

In the instant case it is claimed that section 5 of the Act of April 3, 1804, P. L. 517, 522, does require a conclusion sustaining the judgment below. It provides "That sales of unseated lands for taxes......shall be in law and equity valid and effectual, to all intents and purposes, to vest in the purchaser or purchasers of lands sold as aforesaid, all the estate and interest therein, that the real owner or owners thereof had at the time of such sale, although the land may not have been taxed or sold in the name of the real owner thereof." Under this statute, and section 41 of the Act of April 29, 1844, P. L. 486, 501, which puts tax sales of seated land on the same

plane as that of unseated lands (1 Eastman on Taxation, section 265), it has been held in Caul v. Spring, 2 Watts 390, 396, that "a sale of unseated land for taxes ......vests the title, when regularly made, in the vendee, to the exclusion of all claimants to the land of a prior date." Plaintiff here is not a claimant to the land, however. In Fager v. Campbell, 5 Watts 287, it is said that the sale of unseated land for taxes divests the lien of a mortgage; but, until recent acts preserved that lien, the same thing resulted from a sheriff's sale on an ordinary judgment. Strauch v. Shoemaker, 1 W. & S. 166, says that the title to the land passes, although it is taxed and sold in another name than that of the real owner; but no question arises here regarding the title to the land. In Irwin v. Bank of United States, 1 Pa. 349, 353, it was held that a ground rent is not extinguished by a sale of the land for taxes, because it "is considered as an estate altogether distinct, and of a very different nature from that which the owner of the land has in the land itself. ......The one is an incorporeal inheritance in fee, and the other a corporeal inheritance in fee." Plaintiff's right-of-way is not less distinct from the fee in the land itself, than is a ground rent. In that case, attention is also called to the fact that the ground rent was separately taxed, and some point was made of this in Salter v. Reed, 15 Pa. 260, 264; but it is evident that if the ground rent was "an estate and interest.....[in the land] that the real owners thereof had at the time of such sale," it would be divested because of the Act of 1804, whether or not it was separately taxed, and if it was not such an estate or interest it would not be divested, whether or not separately taxed. Reinboth v. Zerbe Run Improvement Co., 29 Pa. 139, and Franklin Coal Co., v. Bertels, 109 Pa. 550, are like Strauch v. Shoemaker, supra. In Hall v. McCaughey, 51 Pa. 43, it is held that a treasurer's sale for taxes did not destroy the easement of an alley; and in Lesley v. Morris, 9 Phila. 110, in an able opinion by the late Judge THAYER, it was said that a building re-

striction was not destroyed by a tax sale of the property on which the restriction was.

We find nothing in these cases to cause us to differentiate a tax sale from other judicial sales, so far as concerns the present question; and this is so even if the sales of unseated land are alone considered. We therefore hold that if land is sold for taxes, an easement, servitude, or interest in the nature of an easement, is not destroyed, but the purchaser takes subject thereto. It is the "estate and interest...... [of] the real owner or owners" of the land sold, which passes by the sale, and not some other estate or interest, which the "real owner or owners" did not have. The default of "the real owner or owners," was the failure to pay taxes on the land, which they owned and which was subject to the right-of-way; the title which the purchaser acquired was the title of that "real owner or owners," and not also an interest of some other owner, not taxed or referred to in the statute.

Only one other point need be considered. At the trial, plaintiff produced no evidence to show how much it had been injured, or to what expense it had been put by defendant's wrongful acts. Because of this, the chancellor reported that the right to a money decree had been waived. After argument on the exceptions, he concluded he had erred in this respect; but the majority, being of opinion that plaintiff's title was lost by the treasurer's sale, did not pass on the question. In our judgment plaintiff is still entitled to recover these sums: Allison & Evans' App., 77 Pa. 221; Walters v. McElroy, 151 Pa. 549. Until final decree, it could not be known whether or not defendant could be held liable for damages and expenses, or, if he was, to what extent; hence the wisdom of leaving the matter of an accounting, if one is to be had, until after the main question has been finally decided.

The decree of the court below is reversed at the cost of appellee; and the record is remitted with directions

to grant a perpetual injunction, as prayed for, and to appoint a master to ascertain and report the damages and expenses to which plaintiff has been and will be put by defendant's wrongful conduct, and in restoring its pipe, telegraph and telephone lines to the condition in which they were prior to defendant's interference with them.