**Bailey v. Anadarko E&P Company, LP**

C.P. of Lycoming County, No. 08- 02,327

ANDERSON, *J.*, Dec. 10, 2014—Before the court is additional plaintiffs' motion for summary judgment, filed September 9, 2014. Argument on the motion was heard November 4, 2014.

On July 19, 2013, plaintiff and additional plaintiffs filed a second amended complaint in action to quiet title, alleging fee simple ownership of a 168 acre tract of land in Pine Township.[1] Plaintiffs allege that although the

---

1. Plaintiff obtained a default judgment in 2009 on the original

Hoyt defendants reserved all oil, gas and mineral rights to themselves when deeding the property to Elk Tanning Company in 1893, those rights were lost through either[2] abandonment (Count 1), a tax sale in 1910 (Count 2), or a second tax sale in 1940 (Count 3), and, in Count 4, plaintiffs assert that defendants lack standing to challenge plaintiffs' title. In the instant motion for summary judgment, plaintiffs seeks judgment on Counts 2 and/or 3. Because the court finds the tax sale of 1910 extinguished the 1893 reservation, thus terminating any claims by defendants, additional defendants or counter-claim plaintiffs, only Count 2 will be addressed.

Plaintiffs' claim stems from a tax sale held June 2, 1910, which they contend reunited the previously severed subsurface estate with the surface estate because the owner of the subsurface estate never reported the severance to the taxing authorities, the property was thus assessed and sold as a whole, and the property was never redeemed. Plaintiffs contend there are no issues of fact and they are entitled to judgment as a matter of law, citing *Herder Spring Hunting Club v. Keller*, 93 A.3d 465 (Pa. Super. 2014), in support of their position. Defendant objects to entry of summary judgment on various grounds and, in the process, argues that *Herder Spring* was wrongly decided. Such an argument to this court must necessarily fall on deaf ears and although defendant's objections will be addressed seriatim, to the extent an objection requires

complaint, but that judgment was stricken by order of May 29, 2013. The complaint was then amended and additional parties joined. For ease of reference in the instant opinion, the court will refer to additional plaintiffs as "plaintiffs". Similarly, as only defendant Hoyt Royalty, LLC filed a response in opposition to plaintiffs' motion, Hoyt Royalty will be referred to as "defendant" even though there are numerous other defendants.

2. Counts 1, 2 and 3 are pled in the alternative.

this court to ignore *Herder Spring*, it will be addressed no further.

Defendant first argues that the tax deed did not pass title to the subsurface estate because the taxing authorities lacked the statutory authority to assess the subsurface estate as such did not constitute "lands", citing *Coolspring Stone Supply v. Fayette County*, 929 A.2d 1150 (Pa. 2007), and *Independent Oil & Gas Association of Pennsylvania v. Board of Assessment Appeals of Fayette County*, 814 A.2d 180 (Pa. 2002). While the court in *Independent Oil & Gas* did hold that there is no statutory authority for the assessment of real estate taxes on oil and gas interests, it later announced that such holding would not be applied retroactively. *Oz Gas, Ltd. v. Warren Area School District*, 938 A.2d 274 (Pa. 2007). Thus, at the time of the sale, the assessment was valid under the law then in effect, and this argument to the contrary is without merit.

Defendant similarly argues that the taxing authorities could not assess the subsurface estate as no production was occurring which would have provided a basis for valuation. This argument was rejected in *Herder Spring*, which looked to the Pennsylvania Supreme Court's ruling in *Bannard v. New York State Natural Gas Corporation*, 293 A.2d 41 (Pa. 1972), that although mineral rights should not be taxed as if gas or oil existed if it did not, a tax sale believed to be improper because of overvaluation cannot be collaterally attacked fifty years later. *Herder Spring, supra*, fn. 11. In this matter, the attack comes over 100 years later and will not be countenanced.

Next defendant argues that any failure to report the severance cannot serve as a basis for the extinguishment of the subsurface rights through the tax sale as, under

a strict construction of the Act of 1806[3], there was no duty to report the severance. The court in *Herder Spring* specifically found, however, that "[t]he person who severed rights to unseated land was under an affirmative duty imposed by statute to inform the county commissioners or appropriate tax board of that severance, thereby allowing both portions of the property to be independently valued." *Id.* at 471. This argument is therefore without merit.

Relatedly, defendant argues that plaintiffs have produced no evidence the property was unseated. Such is unnecessary, however, in light of defendants' admission that it was.[4]

Defendant next argues that even if there was a duty to report the severed oil and gas estate to the taxing authorities, plaintiffs have offered no evidence that such notice was not given. Plaintiffs are entitled to a presumption, however, that "all actions, such as recording and assessing severed rights, that were required to be taken were taken." *Id.* at 473. That is, if the severance had been reported, it would have been recorded and assessed. According to *Herder Spring*, "failing any affirmative proof to the contrary", the court may conclude the severance was not reported. *Id.*

---

3. The Act of 1806 provides, in pertinent part: "It shall be the duty of every person hereafter becoming a holder of unseated lands, by gift, grant or other conveyance, to furnish to the county commissioners, or board for the assessment and revision of taxes, as the case may be, a statement signed by such holder, or his, her, or their agent, containing a description of each tract so acquired, the name of the person or persons to whom the original title from the Commonwealth passed, and the nature, number and date of such original title, together with the date of the conveyance to such holder, and the name of the grantor, within one year from and after such conveyance, ...." 72 P.S. Section 5020-409.

4. *See* Paragraphs 94 and 104 of Hoyt Royalty, LLC's reply to Anadarko E&P Onshore, LLC's new matter to complaint to join additional defendants, filed March 3, 2014.

Apparently recognizing this burden of proof, defendant offers evidence that Williamsport has suffered flooding in 1894, 1902, 1904 and 1910, that the courthouse has "flooded on several occasions,"[5] and that "the Lycoming County Historical Society does not possess any notices to the board of commissioners dating from the late 1800's to the early 1900's that would have been given under the Act of March 28, 1806."[6] Defendant points to language in *Herder Spring*, that "[t]here is nothing in the certified record to suggest that the records of Centre County were ever subject to flood, fire, or some other calamity or negligence such that it might be presumed that relevant records were lost or destroyed. Absent such proof, we cannot presume such extraordinary events and the loss or destruction of records." *Id.* at 472-73.[7] Defendant contends the proffered evidence in the instant case is sufficient to entitle it to a presumption that the severance was reported but that record of such has been lost or destroyed. The court does not agree, for two reasons. First, defendant has not alleged anywhere in its pleadings that the severance *was* reported. Second, the court believes there must be evidence that *the records* were subject to a calamity, not merely that there was a calamity in the general location. The evidence offered by defendant in this matter is not sufficient to give rise to the sought-after presumption. In any event, *Herder Spring* requires the proof to be offered

5. Defendants ask this court to take judicial notice of these facts.

6. Affidavit of Scott Sager, Curator of Collections for the Lycoming County Historical Society, Exhibit 12 of Hoyt Royalty, LLc's supplemental appendix, filed November 4, 2014.

7. This statement was made in response to the trial court having "credited the Keller heirs' averment in their pleadings that the records of the severed subsurface rights were not kept by the recorder of deeds or were lost or destroyed." *Herder Spring* at 472.

within the two-year redemption period,[8] which has not been done here.

Defendant next argues that even if the Act of 1806 imposes a duty to report the severance, and even if the court concludes the severance was not reported, the Act provides the specific penalty of four-fold taxation, not the confiscation of the property. The identical argument was rejected by the court in *Herder Spring*, however, which concluded that "the four-fold penalty was to be imposed in those situations where no tax sale had taken place." This argument is therefore without merit.

Next, defendant asks the court to consider the holding of *Tidewater-Pipe Company v. Bell*, 124 A. 351, 355 (Pa. 1924), (wherein it was determined that a right-of-way had not been lost in a tax sale of the property) that the Act of 1804 "divests only those prior claimants to the estate and interest of the real owner of the unseated land that was assessed and sold, and not others whose estates or interests were duly severed and recorded prior to the assessment." Defendant specifically points to the following language:

It is the "estate and interest . . . [of] the real owner or owners" of the land sold, which passes by the sale, and not some other estate or interest, which the "real owner or owners" did not have. The default of "the real owner or owners" was the failure to pay taxes on the land, which they owned and which was subject to the right-of-way; the title which the purchaser acquired was the title of that "real owner or owners," and not also an interest of some other owner, not taxed or referred to

---

8. *Id.* at 472: "the Keller heirs who ostensibly took possession of the subsurface rights, had two years from the delivery of the title to Herr, the purchaser at tax sale, to make known their claim."

in the statute.

*Id.* Defendant argues that since the mineral rights had been severed and did not belong to the owner of the surface, and since the reservation of mineral rights had been recorded, that interest did not pass to the purchaser at the tax sale. Defendant fails to note, however, the previous sentence: "We therefore hold that if land is sold for taxes, *an easement, servitude, or interest in the nature of an easement,* is not destroyed, but the purchaser takes subject thereto." *Id.* (emphasis added). Unlike a subsurface estate, a right-of-way does not make one a "holder of unseated lands" and thus subject to the Act of 1806, and indeed, that Act was not implicated in the court's decision. Even the last phrase of the language highlighted by defendant acknowledges the distinction: "an interest of some other owner, *not taxed or referred to in the statute.*" The Act of 1806 does refer to the subsurface estate previously owned by defendant and makes such taxable. *Herder Spring, supra.* The holding of *Tidewater-Pipe* is therefore not applicable.

Next, defendant contends plaintiffs have produced no evidence of compliance with the required tax sale procedures, including the providing of notice. Plaintiffs do not have such a burden, however, as the Act of 1815 "substitute[ed] the 'presumption that everything was rightly done, for the proof that it was rightly done.'" *Herder Spring, supra,* at 469, quoting *Morton v. Harris,* 9 Watts 319 (Pa. 1840). Further, defendant's objection to procedural irregularities[9] is barred by the two-year

---

9. Specifically, defendant contends there was a discrepancy between the number of acres listed in the assessment and the number of acres noted in the treasurer's deed.

redemption period. *Id.* ("The original owner was prevented from offering specific proof of irregularity of process, after a 'lapse of two years from the time of sale.'")[10]

Finally, defendant argues that the notice provisions of the tax sale laws in effect in 1910, which allowed notice by publication, violated the Hoyts' right to due process of law, citing *Mullane v. Central Hanover Bank & Trust Company*, 339 U.S. 306 (1950), and *Mennonite Board of Missions v. Adams*, 462 U.S. 791 (1983). Defendant's reliance on these cases is misplaced, however:

> Many controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case....

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance[.] But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met, the constitutional requirements are satisfied. "The criterion

---

10. Defendant also contends in its second supplemental response, that the 60-day notice period was not observed. While the second supplemental response has been stricken, the court wishes to note that this objection is also barred by the two-year redemption period.

is not the possibility of conceivable injury but the just and reasonable character of the requirements, having reference to the subject with which the statute deals."...

This court has not hesitated to approve of resort to publication as a customary substitute in another class of cases where it is not reasonably possible or practicable to give more adequate warning. Thus it has been recognized that, in the case of persons missing or unknown, employment of an indirect and even a probably futile means of notification is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights....

Accordingly we overrule appellant's constitutional objections to published notice insofar as they are urged on behalf of any beneficiaries whose interests or addresses are unknown to the trustee.

*Mullane, supra*, at 313-18 (citations omitted).

Similarly, in *Mennonite Board of Missions*, while the court held that a mortgagee is entitled to notice reasonably calculated to apprise him of a pending tax sale, and that unless the mortgagee is not reasonably identifiable, constructive notice alone does not satisfy the mandate of *Mullane*, that holding was based on the fact that the mortgagee "clearly has a legally protected property interest". *Mennonite Board of Missions, supra*, at 798.

What defendant overlooks is the fact that by failing to report the severance to the taxing authorities as required by the Act of 1806, the Hoyts no longer had a legally

protected interest and, as far as the taxing authorities were concerned, their interest was unknown.[11] In *Texaco, Inc. v. Short*, 454 U.S. 516 (1982), the United States Supreme Court upheld an Indiana statute which provided for the abandonment of mineral interests unused for twenty years unless certain actions were taken by the holder of such interests.[12] The court relied on prior cases in which the power of the state, to condition the retention of a property right upon the performance of an act within a limited period of time, was acknowledged. The court specifically noted that "[i]n each instance, as a result of the failure of the property owner to perform the statutory condition, an interest in fee was deemed as a matter of law to be abandoned and to lapse." *Id.* at 529. In the instant case, the Act of 1806 required the reporting of severed mineral interests, and the tax assessor's sale of the whole, based on a presumption that no severance had occurred because none had been reported, followed by a failure to redeem the property, could be viewed as a deemed abandonment of the interest. Since it was abandoned, it was not entitled to the legal protection of actual notice of its proposed sale for non-payment of taxes.[13]

---

11. Defendant's contention that the recorded deed should have served as notice to the taxing authorities is without merit. In *Herder Spring*, the Superior Court noted the Supreme Court's admonition that "[t]he record of the deed creating a separate estate in the minerals would not be notice to the assessor or the commissioners, as they were not bound to search or examine the records." *Herder Spring, supra*, at 471.

12. The statute (the Dormant Mineral Interests Act, Ind. Code §§ 32-5-11-1 through 32-5-11-8 (1976) ) provided that "the unused interest shall be "extinguished" and that its "ownership shall revert to the then owner of the interest out of which it was carved."

13. "The court in *Mullane* itself distinguished the situation in which a State enacted a general rule of law governing the abandonment of property." *Texaco, Inc. v. Short*, 454 U.S. 516, 535 (1982). While the Act of 1806 did not by its own express terms dictate that the property was to be considered abandoned if not reported, the courts' interpretation of that Act must be read in conjunction therewith.

In response to defendant's related argument that the Hoyts had no notice that the Act of 1806 required them to report the severance, the court simply notes that "[i]t is well established that persons owning property within a State are charged with knowledge of relevant statutory provisions affecting the control or disposition of such property." *Id.* at 532. Further, "[it] has long been established that 'laws [must] give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly,' but it has never been suggested that each citizen must in some way be given specific notice of the impact of a new statute on his property before that law may affect his property rights." *Id.* at 535-36 (citation omitted).

Further, defendant's attempt to distinguish *Texaco* because it does not involve a tax statute is unavailing. In noting the well-established rule that "persons owning property within a State are charged with knowledge of relevant statutory provisions affecting the control or disposition of such property", *Id.* at 532, the court quoted *North Laramie Land Co. v. Hoffman*, 268 U.S. 276, 283 (1925), as follows:

All persons are charged with knowledge of the provisions of statutes and must take note of the procedure adopted by them; and when that procedure is not unreasonable or arbitrary there are no constitutional limitations relieving them from conforming to it. *This is especially the case with respect to those statutes relating to the taxation* or condemnation of land. Such statutes are universally in force and are general in their application, facts of which the land owner must take account in providing for the management of his

property and *safeguarding his interest* in it."

*Texaco, supra,* at 532, fn. 25 (emphasis added). The court reads nothing in *Texaco* which limits its holding to "property abandonment statutes."[14] Moreover, simply because the current Dormant Oil and Gas Act in this Commonwealth does not authorize an abandonment or confiscation of oil and gas interests for non-use,[15] the court is not required to find that the Act of 1806 also did not intend to lead to a deemed abandonment for non-reporting of severed mineral rights and the consequent non-payment of taxes on those rights. As noted in *Texaco,* "the fiscal interest in collecting property taxes is manifest." *Id.* at 529. Since the Act's reporting requirement furthers that interest, this court simply notes *Texaco*'s declaration that "[t]he state surely has the power to condition the ownership of property on compliance with conditions that impose such a slight burden on the owner while providing such clear benefits to the State." *Id.*

There remain no disputed issues of material fact and application of the law clearly entitles plaintiffs to the following:

## ORDER

And now, this 10th day of December 2014, for the foregoing reasons, the motion for summary judgment is hereby granted with respect to Count 2 of the second amended complaint. The motion is dismissed as moot with respect to Count 3.

---

14. Hoyt Royalty, LLC's supplemental response, filed November 4, 2014, at p. 19.

15. Defendant argues such, and the court will assume for sake of argument that such is true. Defendant has not cited to the relevant statute.