## ‥ ROBERT E. McGOWIN *v.* Z. W. REMINGTON.

1. Where the law does not afford adequate redress by compensation in damages for the detention of personal chattels, equity will remedy the injury by decreeing their return specifically.

2. Where the chattels, whose specific return is sought, consist in part of a kind whose detention cannot, and in part of a kind whose detention can, be adequately compensated in damages, the detention covering both kinds as one transaction, the jurisdiction and remedies of equity will attach to the whole.

· APPEAL from the District Court of Allegheny, in equity.

*Sept.* 20.   On the 6th September, 1847, Z. W. Remington filed a bill in equity, setting forth that prior to the grievances complained of, he had been for many years a surveyor and regulator of the streets, lanes, and alleys of the city of Pittsburgh, and other places around said city, and as such had made many plans and plots of ground in said city and throughout said county, and maps of lands and grades of streets and roads, and drafts of surveys of plantations in other counties adjoining, and possessed certain furniture and instruments of surveying, which were of great value to him, a list of which is appended to this bill and prayed to be made and taken as part thereof—marked as exhibit A.

That on or about 1st April, 1843, intending to engage in other occupations and to remove from Pittsburgh, where he had before resided and had his office for several years, and reposing all confidence in the defendant, the defendant having been for several years under the complainant's tuition and under his service as a surveyor, the complainant, desirous and intending to benefit defendant, who purposed to succeed and follow in the business pursued by the complainant, left in the care and custody of defendant, and for the mere purpose of promoting the interest and business of defendant, all his plots of survey and plans, drafts and property, as set forth in the exhibit A., besides other plots and drafts, which he cannot recollect, that defendant might refer to and use in his said business until they would be required by complainant, he, complainant, expecting some day to resume his old business of surveyor at Pittsburgh, in case he should not succeed in his new occupation.

That complainant, after he had left the said plots, plans, drafts, and property with defendant, went to dwell in Beaver county, and left them in the office, which complainant had occupied before and at his said departure from Pittsburgh, and the possession of which

said office he gave up to defendant along with the said plots, plans, drafts, and furniture and instruments aforesaid, all which things are of real value to complainant, and very difficult and impossible to replace or procure, and no damages for which in a court of law could compensate.

That complainant had used efforts since to procure his papers, furniture, and instruments, to no purpose, defendant refusing to deliver them up, and now threatening that he will destroy them rather than give them up to complainant.

And complainant believes and is informed that the defendant is now engaged in copying many of said plots, plans, and drafts for his own use, and to be used by him as a surveyor in and about said city of Pittsburgh and adjoining counties, to the great injury of complainant; and complainant believes that defendant is disposed and is likely to injure, and fraudulently intends to destroy or secrete said plots, plans, drafts, and instruments, so that complainant may not recommence his business.

That complainant returned to Pittsburgh in the spring of this year, and sometime in July last went to defendant's office and demanded of defendant the return of his said plots, plans, drafts, and instruments, informing him that he had returned to Pittsburgh and opened an office, and resumed his business as a surveyor; defendant refused to deliver them to complainant, and said there were some of them he, defendant, could not get along without.

The bill then went on to propound interrogatories to the defendant touching the several allegations of fact before made, and prayed that McGowin be decreed to deliver up to the plaintiff the said plots, &c., and any copies thereof made since demand. The bill further prayed an injunction to restrain McGowin from copying, and from destroying, or injuring, or secreting said plots, &c., and a subpœna to answer. The exhibit, marked A., contained a detailed list of plots, drafts, furniture, instruments, &c., demanded.

The subpœna issued forthwith, and Sept. 9 a bond having been filed, application was made for an injunction, which was awarded and issued. 4th October, rule to plead, answer or demur by first Monday in November. 29th October, demurrer filed, which was overruled 22d December, and a second special injunction awarded. 3d January, 1848, answer filed, and motion to dissolve injunction.

The answer was to the following effect:—It admitted that Remington was a surveyor, and as such had in his possession plans, plots, maps, &c., such as were specified in the bill, with certain

exceptions, particularized in a schedule of explanations; that he removed to Beaver, and that respondent occupied his office after he left. The answer affirmed that the plans, &c., were greatly over-rated in value, and have no such peculiar characteristics as to make them subjects of equity jurisdiction, by reason of their unique and original description; that most, if not all of them, could be supplied or substituted from other offices, and from private individuals, and from the public records of the county and state, being generally copied, and mostly from papers unofficial and unauthenticated. It affirmed that the plans, &c., belonged, some of them to the respondent, some to other persons, and denied the demand for them, &c., &c.

The complainant filed a replication, and took evidence of his having made the demand mentioned in his bill. On 13th January, 1849, the cause having been heard on the bill, answer, exhibits, and proofs, and on argument of counsel, the Court ordered and decreed that the Clerk of the Court do deliver to the complainant the papers, maps, and plans, which have been placed by order of the Court in his custody, and it is ordered and decreed further that the defendant deliver unto Read Washington, Esquire, one of the Masters in Chancery, all the plots, plans, drafts, furniture, and instruments, left in defendant's possession as set forth in the bill of complainant, and which are not now in the possession of the clerk of this Court, and also of any copies thereof which may have been made by respondent since the day of the demand thereof stated in the bill, and that the Master have power, and is hereby required to ascertain by interrogatories to be exhibited in writing to defendant, whether there are any of the said plans, maps, plots, drafts, furniture, or instruments disclosed in said bill in his possession undelivered, and that the Master require defendant to answer thereto upon oath, and to inquire upon interrogatories of defendant to be administered to him under oath, what copies of, or copying from said papers he may have made, and whether the same have been delivered up; and that said Master make report (if required by further order) to this Court thereof.

And further ordered that the injunction heretofore issued be continued and made perpetual, and that the said Master deliver to the complainant the said plans, plots, drafts, furniture, and instruments which may be placed in his hands by virtue of this decree.

And further ordered that the costs and fees in this suit be taxed

by the clerk, and that the bill thereof be immediately paid by the defendant into Court.

On 20th January, 1849, defendant appealed from this decree, and 20th June following decree was made for a specific delivery, for refusing obedience to which a rule for attachment was taken, and on 4th September respondent appealed. In this Court these exceptions were taken:

1. Want of jurisdiction over subject-matter of the bill.

2. The bill presents no sufficient ground for the interference of a Court of equity in Pennsylvania.

3. The Courts of law have adequate remedies.

4. The decree covers some descriptions of property which are not the subject of equity jurisdiction under any state of facts.

*Craft* and *McCandless*, for the appellant.—Replevin is the appropriate remedy here: Weaver *v.* Lawrence, 1 Dall. 157; Mulholm *v.* Cheney, Add. 303; as it would have been in England if Chancery had not usurped jurisdiction, and that action thereby fallen into disuse: Chitty Pr. 811; Jeremy, Eq. Jour. 467.

These plans, maps, &c., are not like the specific chattels pursued in equity. They are neither valuable paintings: 13 Vesey, 95; nor heir-looms: 3 Vesey & B. 18; nor Pusey horns: 1 Vernon, 273; nor even finely carved cherry-stones: Ambler, 77; nor tobacco-boxes held in trust: 3 Vesey, 76; nor any article but what may be replaced, or so closely imitated as not to be within the range of equitable protection, being derived from resemblance to objects in nature: Chitty Pr. 813; Jeremy, 322.

Where a matter concerning personal chattels can be compensated in damages, the remedy is at law only: Hardwick *v.* Forbes' Admin., 2 Bibb's Rep. 212; Nutbrown *v.* Thornton, 10 Vesey, 159; Cudd *v.* Rutter, 1 P. W. 570; Errington *v.* Agnesby, 2 Broc. 341; unless defendant is not responsible from insolvency: Cam. and Norw. 36.

Wherever delivery can be compelled by stress of damages, the law is sufficient. Maps are not articles of *feeling*: 3 Ves. 71; nor to be estimated according to *pretium affectionis;* nor is this a question of trust. Sir Joseph Jekyll decreed a specific performance in case of a chattel, but Lord Macclesfield reversed his decree; and from that time the rule of Court has been, not to retain such a bill: 1 Madd. Ch. 295.

*Dunlop*, contrà.—This bill is maintainable: 2 Story, Eq. 24, §§ 709, 710. The answer contains no denial of the bill. It is frivolous, contradictory, and equivocating: Clarke's Executors *v.* Riemschyk, 9 Cranch, 161; 2 Daniel Ch. Pr. 404, 409; 4 Russ. 112. Matters of avoidance are no evidence on the answer merely: 2 Story Eq., § 1528–29. The respondent gave no evidence to sustain his allegations.

The opinion of this Court was delivered by

BELL, J.—The defendant having failed to sustain, by proof, his allegation of sale or gift of the articles sought to be recovered by this bill, the contest in this Court is reduced to two questions: first, whether the bill presents sufficient grounds to warrant the interference of a Court of Equity, in this state, under the statute conferring equitable jurisdiction? Secondly, whether that portion of the decree which covers the surveying instruments and furniture described in the exhibits annexed to the bill can be sustained?

As to the first point: the defendant insists that the only remedy is at law. Though the action of replevin is, with us, a broader remedy than in England, lying in all cases where one man improperly detains the goods of another, it is in no instance effective to enforce a specific return of chattels, since a claim of property and bond given is always sufficient to defeat reclamation, no matter what may be the eventual issue of the contest. As, therefore, our common-law tribunals are as powerless for such a purpose, as the similar English Courts, the propriety of exerting the equitable jurisdiction now invoked must depend with us on the same reasons that are deemed sufficient to call it into action there. Here, as there, the inquiry must be whether the law affords adequate redress by a compensation in damages, where the complaint is of the detention of personal chattels. If not, the aid of a Court of Chancery will always be extended to remedy the injury, by decreeing a return of the thing itself.

The precise ground of this jurisdiction is said to be the same as that upon which the specific performance of an agreement is enforced, namely, that fruition of the thing, the subject of the agreement, is the object, the failure of which would be but illy supplied by an award of damages: Lowther *v.* Lowther, 13 Ves. 389. In the application of this rule some difficulty has been experienced. The examples afforded by the English books are usually those cases, where, from the nature of the thing sought after, its

antiquity, or because of some peculiarity connected with it, it cannot easily, or at all, be replaced. Of these may be instanced, the title-deeds of an estate and other muniments of property; valuable paintings: Lowther *v.* Lowther, *supra;* an antique silver altarpiece: Duke of Somerset *v.* Cookson, 3 P. Wms. 389; an ancient horn, the symbol of tenure, by which an estate is held: Pusey *v.* Pusey, 1 Ves. 273; heir-looms: 3 Ves. & B. 18; and even a finely carved cherry-stone: Ambler, 77. Such articles as these are commonly esteemed not altogether, or perhaps at all, for their intrinsic value, but as being objects of attachment or curiosity, and, therefore, not to be measured in damages by a jury, who cannot enter into the feelings of the owner; so too the impossibility, or even great difficulty of supplying their loss, may put damages out of the question as a medium of redress. But these are not the exclusive reasons why Chancery interferes, for there may be cases in which the thing sought to be recovered is susceptible of reproduction or substitution, and yet where damages could not be so estimated as to cover present loss or compensate its future consequent inconvenience. And I take it this is always so, where, from the nature of the subject or the immediate object of the parties, no convenient measure of damages can be ascertained; or, where nothing could answer the justice of the case but the performance of a contract in specie. Of this Buxton *v.* Lister, 3 Atk. 384, furnishes an example in the analogous instance of a contract for the sale of personalty: contracts, which are most commonly left to be dealt with at law. It was a bill to enforce the performance of an agreement for the purchase of several large parcels of growing wood, to be severed by the defendants, who were to have eight years to dispose of it and to pay for it, in six yearly instalments. Lord Hardwicke was, at first, extremely reluctant to entertain the bill, but after discussion came to the conclusion, that, though relating to a personal chattel, it was such an agreement that the plaintiff might come into Chancery for a specific performance. He instanced the case of Taylor *v.* Neville, which was a bill for the performance of articles for the sale of eight hundred tons of iron, to be paid for in a certain number of years, by instalments, where the decree prayed for was made; and proceeded to observe—"such sort of contracts as these, differ from those that are immediately to be executed. There are several circumstances which may concur. A man may contract for the purchase of a great quantity of timber, as a ship-carpenter, by reason of the vicinity of the timber; and this is on the part of the

F

buyer. On the part of the seller, suppose a man wants to clear his land in order to turn it to a particular sort of husbandry; there nothing can answer the justice of the case but the performance of the contract in specie." Similar in principle is the case of Falls *v.* Reid, 13 Ves. 70, where the plaintiffs prayed the restoration of an engraved silver snuff-box, used for many years by a society, as the symbol of their association; and Nutbrown *v.* Thomson, where a tenant brought a bill against his lessor, who, under pretence of the tenant's covenant, had repossessed himself of the land, and seized upon the stock of cattle, which by the lease the tenant was to enjoy for seven years. The objection was that the tenant's remedy, if he was entitled to one at all, was at law, in damages. But how, asked Lord Eldon, are damages to be estimated in such a case? The direction to a jury must be to give, not the value of the chattels, but their value to the tenant! A similar question may well be propounded in our case. By what standard would you measure the injury the plaintiff may sustain *in futuro* from being deprived, even for a brief period, of the use of papers essential to the prosecution of his business? Their intrinsic value might, perhaps, be ascertained by an estimate of the labour necessary to their reproduction, admitting the means to be at hand, and within the power of the plaintiff. But how could a tribunal ascertain the probable loss which, in the mean time, might be sustained? The present pecuniary injury might be little or nothing, and so possibly of the future; or it might be very great, depending upon the unascertainable events of coming time, as these may be influenced by the misconduct of the defendant. These considerations show, I think, the case is not one for damages. Besides, as many of the maps, plans, surveys, and calculations are said to be copies of private papers, we are by no means satisfied they could be replaced at all. Certainly not without permission of the owners; a risk to which the plaintiff ought not unnecessarily to be exposed. If to these reflections we add the fact that some of these documents are the original work of the plaintiff, of value as being predicated upon data possibly no longer accessible, a wrong is perpetrated which a chancellor ought not to hesitate in relieving. It is enough for this purpose, that a perfect relief at law is not apparent. The thing to be guarded against is, not the invasion of the defendant's rights, for he stands here absolutely without any, except the common interest every citizen has in preserving the proper line of distinction that divides the jurisdiction and limits the powers of the

several Courts. What is to be avoided is an unnecessary trespass upon the province of the common-law tribunals, and this is to be tested by the simple query whether they offer a full remedy for the wrong complained of?

But there is another ground upon which this proceeding may be sustained. In Falls *v.* Reid, the snuff-box was deposited with the defendant, as a member of the society, upon certain terms, to be redelivered upon the happening of certain events. Lord Rosslyn held that under these facts, the defendant was a depositary on an express trust which, upon a common ground of equity, gave the plaintiff title to sue in that Court; and in this he was supported by Lord Eldon, in the subsequent case of Nutbrown *v.* Thornton. According to the proof in our case, the papers and documents claimed were left with the defendant under the express understanding that they were to be redelivered whenever the plaintiff should see fit to resume the business of his then profession in this city. It is then the case of direct confidence violated—a spell sufficiently potent to call into vigorous activity the authority invoked.

As to the second question, it is perhaps enough to say, that when once a Court of equity takes cognisance of a litigation, it will dispose of every subject embraced within the circle of contest, whether the question be of remedy or of distinct yet connected topics of dispute. If the jurisdiction once attaches from the nature of one of the subjects of contest, it may embrace all of them, for equity abhors multiplicity of suits. Thus in the case last cited, the Chancellor ruled that where a person is found wrongfully in possession of a farm, over which the Court had undoubted power, and also in possession of the stock upon it, at the same time and under the effect of the same wrong, the Court will undoubtedly make him account for and deliver back the whole. In the case at bar the surveying instruments and office furniture stand in the same category with the maps, drafts, &c.; were delivered to the defendant at the same time, and are withheld by an exertion of the same wrong. In short, they enter into and make part of the same transaction, and may, therefore, be the objects of the same measure of redress.

Decree affirmed.