## McKallip, Appellant, v. Altoona.

*Contracts — Municipal contract — Reservoir — Substantial performance—Extra work provisions—Rescission—Waiver—Estoppel —Retained percentage—Principal and surety.*

1. A contract for the construction of a reservoir for a city provided that all rock encountered in making the necessary excavations for the core-wall, was to be taken out. The excavation of this rock was to be paid for at a certain unit price per yard. It was supposed that there would be enough loose stone from such excavations to make the facing and the riprap for the inner slope of the reservoir. It turned out however that there was not sufficient loose stone for the work, and the contractor was obliged to go beyond the lines of the reservoir and blast rock from the hillside at an additional expense. It was not denied that the contractor was bound to furnish this material to complete the facing and riprap. He claimed, however, that he was entitled for this work, the unit price of rock excavation as specified in the contract. The city claimed that this work was taken care of under the extra work clause which provided that extra work or material was such extra work or material as the contractor was required to perform or furnish, and for which no definite price per unit was fixed in the contract. *Held,* (1) that the construction placed upon the contract by the city was correct; (2) that the contractor had no right to decline to proceed with the work because of the city's refusal to accept his construction of the contract; (3) that the doctrine of substantial performance had no place, inasmuch as the reservoir was not in any sense completed until the facing and riprap were in place; and this was the case although a small part of the reservoir might be used.

2. In such a case the fact that the city had waived its right to rescind the contract because of the noncompletion of the work within the time limit, did not estop it from thereafter rescinding the contract when the contractor refused to do certain parts of the work required by the agreement.

3. Where the contract of suretyship for the performance of a municipal contract, provides that, in case of default by the principal, all moneys due to the principal by the city shall thereupon become

payable to the surety company, the principal in an action against the city cannot claim the retained percentage, on the ground that the surety had not collected and might never collect such percentage.

4. The retained percentage was, by the terms of the contract of suretyship, assigned to the surety, and it was bound to collect it, less any claim that the city might have against it, and a failure to do so, after proper notice, would make it, and perhaps the city also, liable to an accounting for the net balance due by the city, as well as any balance due on the last estimate paid to the surety company.

5. In affirming a judgment against the principal in such an action, the appellate court will do so without prejudice to his right to proceed for such moneys as may be due him, by a proper action in law or equity.

Argued April 21, 1918.  Appeal, No. 42, Jan. T., 1917, by plaintiffs, from judgment of C. P. Blair Co., Jan. T., 1917, No. 66, on verdict for defendant in case of Robert L. McKallip, surviving and liquidating partner of Charles J. Carothers, trading as Carothers Contracting Company, on their behalf and in part for the use of South Side Trust Company of Pittsburgh, v. City of Altoona.  Before BROWN, C. J., FRAZER, WALLING, SIMPSON and KEPHART, JJ.  Affirmed.

Assumpsit to recover a balance alleged to be due for the construction of a reservoir.  Before BALDRIGE, P. J.

The court gave binding instructions for defendant.

Verdict and judgment for defendant.  Plaintiffs appealed.

*Error assigned* was in giving binding instructions for defendant.

*Thomas H. Greevy* and *John E. Laughlin,* with them, *J. F. Sullivan,* for appellants.—Rock excavation was not extra work as contended by the defendant: Coryell v. Dubois Borough, 226 Pa. 103.

The contract was substantially performed and reservoir taken possession of and used by the city from 1910: Preston v. Finney, 2 W. & S. 53; Chambers v. Jaynes, 4

Pa. 39; Danville Bridge Co. v. Pomroy, 15 Pa. 151; Smith v. Cunningham Piano Co., 239 Pa. 496; Denahan & Co. v. Holmesburg Granite Co., 45 Pa. Superior Ct. 399.

Defendant waived right to rescind when, for more than two years after expiration of time for completion, they permitted plaintiffs to continue work and made monthly payments therefor: Pressy v. McCornack, 235 Pa. 443; Coryell v. Dubois Borough, 226 Pa. 103; Honesdale Ice Co. v. Lake Lodore Imp. Co., 232 Pa. 293.

*Thomas C. Hare,* for appellee.—The case at bar rather falls within the class of cases of which the case of Harris v. Sharpless, 202 Pa. 243, is a type.

OPINION BY MR. JUSTICE KEPHART, May 21, 1919:

The Carothers Contracting Company entered into an agreement with the City of Altoona for the construction of a large reservoir, and the National Surety Company, of New York, became surety for the contract. Various parts of the work were separately set out, but the plans and specifications, as a whole, called for a completed reservoir. As the separate parts relate to the question now before the court, provision was made for a core-wall to be built on solid foundation; against this core-wall, on the inner and outer sides, embankments were to be placed, and on the inner embankment a top covering of riprap and stone facing. The details were clearly set forth. In the progress of the work, certain excavation was necessary; that is, earth was to be removed to secure proper foundation for the core-wall, depth for the pipe-trenches leading from the reservoir and elsewhere, and for the embankments. In making the excavations, all rock encountered was to be taken out; boulders over a certain size and strata formation were to be blasted. Approximately 500,000 cubic yards of earth were moved from the borrow pits, inside the flow-lines of the reservoir, to the embankment. All rock blasted under these

circumstances was to be paid for at a unit price of $2 per yard. It was, however, expected there would be enough loose stone from the borrow pits and other excavations to make the facing and the riprap for the inner slope of the embankment next to the core-wall: compensation for this was fixed at thirty cents per yard, as embankment. It was constructed as follows: When the earth, placed against the core-wall on the inside, reached a specified slope, it was protected by a covering of rock at least four feet deep from the bottom to an elevation where the slope-paving began, and from thence a two-foot backing was required. There was not sufficient loose stone from the various excavations to finish the work of riprap and facing. The contractor at no time denied its obligation to provide the material for this work. It was necessary to go outside the flow-lines to get it, at an additional expense, by blasting the rock from the hillside. The contractor claimed it should be paid rock price for this work. The city authorities admitted the error as to amount of loose stone on hand from the excavations, but held it was an uncertainty arising in the progress of the work, which was taken care of by the extra work clause, which reads as follows: "It is understood that extra work or extra material, as considered in the contract and specifications, is work or material that the contractor is required to perform or furnish, and for which no definite price per unit is fixed in the contract, specifications or proposals." The city authorities, by letter of October 8th, directed the stone be procured at a designated point outside the flow-lines, the contractor to be paid the extra work price, viz: cost plus fifteen per cent for profit, superintendency and general expense for "quarrying and loading the stone," the city paying, in addition, the contract price of thirty cents per yard when it was in place in the embankment. The contractor declined to accept this determination and in reply set up an entirely new price not mentioned in the agreement, namely, force account, with a per diem charge

for engine, cars and track. It refused to depart from
this price during the period of discussion, ending Novem-
ber 12th, when it refused to do the work, the city sus-
pending the contract December 7th. The municipality
served notice of suspension on the surety; this company,
under the surety agreement, proceeded to complete the
work as if no default or abandonment had occurred.
The contractor sued in its own behalf and for the bene-
fit of the use-plaintiffs, to whom part of its claim had
been assigned, seeking to recover the amount of the last
estimate due when a default was declared, the retained
percentage and damage for an unlawful rescission of the
contract. A judgment was directed against the plain-
tiffs; hence this appeal.

It is urged that under the contract the quarrying of
stone for the slope-facing and riprap was to be paid for
as rock excavation. We have endeavored to point out
generally the different parts of the work, how they fitted
into each other, and were so specified that they could
have been let to different contractors. By the express
terms of the contract, as well as the general scheme of the
work, rock excavation was limited to such work as was
necessary in the construction of the reservoir, that is,
such excavation as was actually demanded at the places
indicated on the plans. The core-wall must have an even
rock foundation of a sufficient depth, in this case from
ten to twenty feet. Loose rock within that space must
be taken away, otherwise the foundation would be inse-
cure. The same may be said of the pipe-trenches. The
earth within the flow-lines was to be used for the em-
bankments, securing greater storage capacity, as well as
evening up the flow-lines of the reservoir. It was at
these places loose rock was expected to be found in quan-
tities sufficient to cover the inner slope when the work
was completed. There were no uncertainties about
the work to be done; the only facts made doubtful as the
work progressed were, the place where the balance of the
loose rock was to be secured, and the price the contractor

was to be paid. The specifications were explicit in declaring a sufficient quantity of rock would be taken from the various excavations. This having failed, it had to be secured at a place different from that mentioned in the agreement. Sufficient might have been gotten from the hillside, at a distance, or the way the city directed, but it is clear the quarrying and loading of the stone must necessarily be work and material that the contractor was required to furnish, for which no definite price per unit was fixed, and covered by the extra work clause of the contract. The contractor, therefore, could not decline to proceed with the work; nor was the fact that the appellee rescinded the contract while the discussion was going on, material. The stipulated price for extra work or material mentioned in the contract refers to a gross sum or certain figure; it does not affect the determination of the question.

The doctrine of substantial performance has no place here as the reservoir was not in any sense completed until the facing and riprap were in place; a small part of the reservoir might be used, but not until that work was done: Gillespie Tool Co. v. Wilson et al., 123 Pa. 19, 26; Denahan & Co. v. Holmesburg Granite Co., 45 Pa. Superior Ct. 399, 403. The appellants had been paid for everything due until the last estimate; this, under the contract with the surety company, was to be paid the latter company.

When the city waived its option to rescind or annul the contract because it was not completed within the time limited, it did not thereby deprive itself of the future right to annul or suspend the contract for work done in an unsatisfactory manner, or when the contractor refused to do certain parts of the work required by the agreement; the city was not estopped from declaring a forfeiture, annulment, or suspension for sufficient cause other than the time of completion: Wiggin v. Marsh Lumber Co., 77 W. Va. 7, 16; Beltinck v. Tacoma

Theatre Co. et al., 61 Wash. 132, 136; Nibbe v. Brauhn, 24 Ill. 268, 270.

When the contract was annulled, the last monthly estimate of $4,816.60 was due appellants, and $10,000 was retained by the city as an indemnity against loss through anything arising out of the contract. The terms of the suretyship provided: "If the said principal shall in any manner default in the performance of any matter or thing in said contract......the surety company shall have the right, at its option, to assume......said contract and to proceed thereunder as if no default or abandonment had occurred......and all moneys agreed therein to be paid said principal and which at the time of the default [shall] be due the principal shall thereupon become payable to the company and shall be paid to it; anything to the contrary notwithstanding." The city properly paid the surety company the amount of the last monthly estimate; and, when the final estimate was given, the retained $10,000 was to be paid. But appellants urge that the surety company has not collected, and may never collect the retained percentage. The fact none the less remains that the retained percentage, by the terms of the suretyship, is assigned to the surety company, which is in duty bound to collect it, less any claim the city may have thereagainst, and a failure so to do after proper notice will make it, and perhaps the city also, liable to an accounting for the net balance due by the city, as well as any balance due on the last estimate paid to the surety company. Upon this record, however, the matter is not ripe for determination and we shall, therefore, protect appellants' rights by the judgment we enter.

After careful consideration of all the assignments of error, they are dismissed, and the judgment of the court below is affirmed, without prejudice to the right of the appellants to proceed for the moneys herein indicated by such action in law or equity as shall be warranted by the facts.