Fleming et al., Aplnts., *v.* Adamson et al., Aplnts.

Argued December 3, 1935. Before FRAZER, C. J., SCHAFFER, MAXEY, DREW, LINN and BARNES, JJ.

*Robert Von Moschzisker,* with him *James J. Gallagher,* for appellants (Nos. 6 and 7).·

*James J. Gallagher,* for appellant (No. 9).

*Chas. E. Berger* and *Duane R. Dills,* with them *J. F. Mahoney* and *Jack J. Levinson,* for appellee.

OPINION BY MR. JUSTICE LINN, January 6, 1936:

On September 17, 1930, January 6, 1931, and August 20, 1931, respectively, contracts were executed by Schuylkill County, acting by the county commissioners, and the Poole Engineering & Machine Company, a corporation, for the sale by that company to the county of the voting machines described in the contracts. The machines were delivered but have not been paid for; fifty-five of them were. used at the Primary Election held September 30, 1931.

On December 10, 1931, a taxpayers' bill was filed which was several times amended before the hearing[1] that ended in the decree now complained of. The defendants named in the bill were the three county commissioners, the county controller, the county treasurer and the receivers of the Poole Engineering & Machine Company. For convenience both the corporation and the receivers will be referred to as the Poole Company in the course of this opinion.

On averments of certain infirmities in the contracts, and certain failures in performance, plaintiffs prayed for a decree declaring the contracts void, restraining the

---

[1] The amended bill on which the trial was held, was filed December 23, 1932; hearings began April 19, 1933, and were concluded October 25, 1933. After eliminating what was considered unnecessary on appeal, the printed record contains over twenty-five hundred pages.

county from keeping and using the machines, and requiring the Poole Company to take them back. On April 5, 1933, two of the commissioners, Adamson and Brownmiller, describing themselves "as the majority of the Board of Commissioners[2] of said county," filed an answer entitled, "Answer of the County of Schuylkill," admitting all the averments in the bill, and adding an averment that the commissioners on January 13, 1932, had passed a resolution declaring the contracts void. The Poole Company filed a responsive answer putting in issue the averments of the bill, asserting laches, and asking affirmative relief (Equity Rule 52). The third commissioner, Kirchner, filed an answer raising issues and in substance averring the validity of the contracts and performance by the Poole Company. The case was tried before the learned President Judge of the court below; he filed an exhaustive adjudication that will be found reported in 34 Schuylkill Legal Record 19 and in 1 Schuylkill Register 334. The court in banc heard argument on exceptions to the adjudication. By final decree the bill was dismissed; the Poole Company was ordered to make certain changes in the machines (a subject to be dealt with later) and the county was ordered to pay the contract price to the Poole Company when the changes were made. It was in accord with a prayer for payment contained in the answer of the Poole Company that the county was ordered to pay. The plaintiff taxpayers and the county have appealed.

---

[2] Between the time when the contracts were made and the machines were delivered, on the one hand, and January 13, 1932, when the resolution declaring the contracts void was passed by a vote of two to one, there was a change in the membership of the commission. Prior to January 4, 1932, the commissioners were Walton, Kirchner and Brownmiller. Walton's term expired and he was succeeded by Adamson, the other two men holding over. The dispute between the county and the appellee appears to date from that change of personnel in the commissionership.

Appellants' objections are of two classes: (a) of procedure, (b) of substance. The county contends that the learned court below erred in decreeing that one defendant (the county) make payment to a party (the Poole Company) also named as defendant; or (restating it) that there was error in treating one defendant, the county, as a plaintiff and making a decree, as on a counterclaim in assumpsit, that this party pay the counterclaiming defendant in accordance with its prayer for relief.

There is no doubt about the right of a chancellor to treat the parties to a suit as the identity or diversity of interests may require for the purpose of comprehensively administering equity in the particular case. It is a principle of equity practice *(Schwab v. Miller,* 302 Pa. 507, 153 A. 731; *Miron v. Percheck,* 279 Pa. 456, 124 A. 127) recognized in our rules[3] and follows from the general principle that, having taken jurisdiction, equity will adjudicate the whole controversy. The application of the rule is peculiarly appropriate in this case. After the plaintiff taxpayers had presented part of their evidence, with counsel for the county at the same table with counsel for the Poole Company, counsel for the county announced that he would leave defendant's counsel table, and, thereafter, on behalf of the county, would join with the plaintiff-taxpayers in asserting against the defendant the claim for relief pleaded in the bill and in resisting the Poole Company's counterclaim.[4] The county

---

[3] Equity Rule 17. "At any stage of the suit, the court may direct the joinder of additional parties, if this is deemed essential in order that justice and equity may be done; and may stay all proceedings until compliance with this requirement." Equity Rule 25. "By leave of court, any person or persons claiming an interest in a pending suit, may be permitted to assert his, her or their right by intervention at any stage of the proceedings; but this shall be in subordination to and in recognition of the propriety of such suit."

[4] Counsel then appearing for the county stated: "Our interests are diametrically opposed to the other defendants; and I propose,

cannot now repudiate that voluntary action; indeed, its answer made such action inevitable; it admitted the averments in the bill and showed that the county's interests were identical with those averred on behalf of the taxpayers and were opposed to those of the Poole Company as asserted in its answer and prayer for relief. The fact is that the pleadings disclosed a contest between the county, represented by a majority of the commissioners, on one side, and the Poole Company and the third commissioner on the other.[5]

---

with your Honor's permission, to now take an active part in this case. Mr. Berger: On which side, let the record show. Mr. Shay: To protect my clients, the County of Schuylkill and the two Commissioners whom I represent, Adamson and Brownmiller. There is a suit pending by the other defendant against the County of Schuylkill, and I believe a substitution has been made of the Receivers in Bankruptcy; and I claim the right now to defend the County of Schuylkill."

[5] The 6th conclusion of law, responsive to a request of the taxpaying plaintiff for such a finding, is as follows: "Under the evidence and the pleadings in this case, the County of Schuylkill is a co-plaintiff with the taxpayers—plaintiffs in this bill." During the course of the trial when the order of producing evidence was under discussion, counsel for the county said: "I have stated often in the conduct of this case, and especially the last day, that the County of Schuylkill's interests are diametrically opposed to the interests of the voting machine company, and we admit that; and, your Honor, please, on behalf of the county, I have no testimony to present; and with your Honor's ruling of the right of rebuttal with any of the parties, I am content to rest." The plaintiff-taxpayers, apparently with no objection from the county, also presented the following request for a conclusion of law. "20. The jurisdiction of the Court in this case extends to the granting of relief between the County of Schuylkill and the Receivers of the Poole Engineering & Machine Company nominally co-defendants because during the trial of the case the solicitor for the County of Schuylkill and the County Commissioners joined in the request that the contracts be held to be void and that the County be forbidden to make any payments under the contracts: *Wright v. Barber*, 270 Pa. 186, 113 A. 200."

On this record we cannot sustain the objections of substance presented on behalf of the appellant county. They cover a wide range and are repeated in various forms: for example, it is said that (a) there was a burden of proof on the Poole Company which was not met; (b) the conditions necessary to the making of valid contracts do not appear; (c) the machines did not comply with specifications and with the statutes and were structurally defective in important particulars; (d) the county was deprived of its right to trial by jury.

The appellee replies that the county is not entitled to review on a theory not supported by the record and not presented below; it asserts that the proof of facts in issue is adequate; that the machines complied with the specifications, and were not structurally defective; that the county was not deprived by the court of any right; that, on the contrary, the case required the application of the rule that equity having taken jurisdiction would "proceed to round out the whole circle of controversy between the parties by deciding every contention connected with the subject-matter of the suit," in order to avoid other suits dealing with the same subject between parties already at issue in this case: *McGowin v. Remington,* 12 Pa. 56, 63; *Hurst v. Brennen (No. 1),* 239 Pa. 216, 223, 86 A. 778; *Tidewater Pipe Co. v. Bell,* 280 Pa. 104, 110, et seq., 124 A. 351; *Rosenberger v. Kuesel,* 292 Pa. 184, 190, 140 A. 860; *Schwab v. Miller,* 302 Pa. 507, 509, 153 A. 731.

In considering these divergent contentions, we must apply the fundamental rule of appellate review applicable in such appeals: "Where no question is raised as to the form of the action or the nature of the proceedings in the court below to obtain relief, the defendant will be regarded as having waived the objection and will not be permitted to raise it for the first time in the reviewing court": *Ehmling v. D. L. Ward Co.,* 279 Pa. 527, 533, 124 A. 181; *Henes v. McGovern,* 317 Pa. 302, 305, 176 A. 503.

Appellant suggests that in this case the rules of pleading, ordinarily applicable, should be relaxed and the county be permitted to insist that the Poole Company must prove all the facts (though not put in issue by the pleadings) necessary to justify recovery that it would have been obliged to prove if it had brought an action of assumpsit against the county for the price of the machines and if, in that action, the county had put all such facts in issue. The Poole Company should of course not recover unless the record shows performance of valid contracts. The county complains that the Poole Company was not required to produce such evidence.[6] The suggestion must be rejected for several reasons. To disregard the issues made by the pleadings, save by express or implied consent, would generally lead to intolerable confusion, uncertainty, waste of time and public expense. The liberal construction of the statutes allowing amendments (and of Equity Rule 56) protects against possible hardship. When these parties went to trial, the frequently amended pleadings clearly advised that the county, in the joint answer filed by two of the commissioners, insisted on the invalidity of the contracts for specified reasons and the right to reject the machines on specified grounds, while the Poole Company and the third commissioner asserted the validity of the contracts, adequacy of performance, and consequent right to recover the contract price on the basis of the issues pleaded. Later, in the course of the trial, when the county announced its formal alignment with the plaintiff taxpayers, it acted with knowledge of the issues raised and without proposing further amendment; it knew that

---

[6] The point was stated by appellant as follows: "2. That the court below erred in not requiring the Poole Engineering & Machine Company to introduce or point to evidence on the record tending to establish those facts which would have been required to sustain such a judgment as here entered had a suit at law been brought against the County of Schuylkill by said company to obtain payment for the voting machines furnished by it."

after a change of membership among the commissioners,[7] a majority of them on January 13, 1932, had repudiated the contracts made by their predecessors, and, by their answers, had declared their legal position to be the same as that pleaded in the bill. The case was tried accordingly and on that theory the appellee is entitled to have the record reviewed.

In dealing with appellants' argument on objections of substance, we all agree that no reversible error has been shown. There is no doubt about the general rule that (in the words of appellants' brief) "when a corporation sues on a contract entered into with a governmental board, or seeks to enforce payment to it for goods delivered or services rendered under the contract to such a body, the claimant must prove and establish its case, and if certain steps, acts or doings are required preliminarily to the making of the contract in question, the fact that such steps have been taken, such acts performed and such doings occurred must be shown by evidence produced at trial." But it is equally well settled that proof need only be made of relevant facts put in issue. The ultimate inquiry was whether the contracts were invalid in the respects averred or whether they were valid with the resulting obligation to pay as agreed. That is to be determined by the record as now presented, without regard to which party presented the evidence of the issuable facts. The learned court below concluded that neither violation of statute nor failure to comply with specifications appeared; that it necessarily followed that plaintiffs, including a majority of the commissioners acting for the county, had failed to make good their averments of invalidity; and that, no infirmity appearing, the county was not justified in withholding payment. The findings of fact, resulting in the conclusions adopted,

---

[7] At the trial, the county was represented by former Judge SHAY; he stated on the record ". . . and I was employed when the new Board of Commissioners came in, specially, to defend these cases."

are supported by evidence, and, on familiar principles, must be accepted.

Prima facie, the appellee and commissioners who made the contracts are entitled, as the case was presented below, to rely on the "presumption that official acts or duties have been properly performed, and [that] in general it is to be presumed that everything done by an officer in connection with the performance of an official act in the line of his duty was legally done": *Falkinburg v. Venango Twp.*, 297 Pa. 358, 362, 147 A. 62; *Georges Twp. v. Union Trust Co.*, 293 Pa. 364, 374, 143 A. 10; *Sheets v. Armstrong*, 307 Pa. 385, 394, 161 A. 359. The presumption was not rebutted. The learned court below found, on the evidence, that the contracts were lawfully awarded, that the specifications were complied with, and that, if properly adjusted and used as they were intended to be used, the machines would perform efficiently. In addition it may be noted that the learned chancellor has given his opinion, unfavorable to appellants, of matters in the record, not formally put in issue, which the county now refers to as not proved by the Poole Company. In dealing with many claims of alleged noncompliance with specifications, the learned chancellor said: "If the bill had included the foregoing [referring to specified details], we would have been compelled to find that the machines complied therewith."[8]

---

[8] The chancellor said: "We are ignoring all evidence, and discussion by the plaintiffs in their argument of counsel and requests for findings of fact, of and concerning failures or alleged noncompliances with the specifications not set out in the bill of complaint as the basis of relief, being wholly irrelevant, the noncompliance being specially individuated. Such omissions comprehend paragraphs b, c, d, g, h, j, l, m, n, p, q, r, and t of the specifications and cover the following: (b) straight party voting; (c) split ticket voting; (d) irregular row, group and referendum voting; (g) irregular voting; (h) ability to change vote up to the time the voter leaves the machine; (j) voting devices for separate candidates and questions with eleven rows and columns, to be assigned in adja-

38

Appellants' criticism that there was no proof that the contracts were awarded on a "common basis or standard of bidding" (a necessary element, of course: *Page v. King*, 285 Pa. 153, 131 A. 707) is met by the contention of the appellee that it is now too late, after the trial in which no issue was made on the subject, to complain. Not only was no issue made on this subject in the pleadings but the case was tried on the theory that the point was not involved. It was not raised until the case was heard by the court in banc on exceptions and then only as to one of the three contracts.[9] If the first award were considered defective in this respect, the fact should have been alleged originally or by amendment; in the absence of such averment, the answering party was entitled to proceed on the face of the record (*Luther v. Luther*, 216 Pa. 1, 9, 64 A. 868; *Glover v. Phila.*, 304 Pa. 466, 469, 155 A. 862); it made no difference that a counter-

cent rows or columns to candidates of a party with eleven office columns or rows transverse thereto; (l) protective counter; (m) locks; (p) machine to be constructed so that voter can readily learn method of operation; (q) safe transportability; (r) ability to lock out unused voting device; (t) ability to vote for more than forty candidates at a primary. If the bill had included the foregoing, we would have been compelled to find that the machines complied therewith. The so-called four-in-a-row jam; star wheel jam arising through the deliberate or mistaken placing of the star wheels on the machine in a reverse position; pinion jam, requiring a deliberate maladjustment of the machine; split ticket jam occurring through disobedience to the printed instructions beside the party lever; return of party handle; judge's lock; dead centering of buttons, and transportability, are considered irrelevant as we view the allegations of the bill. And in our opinion, under the evidence, they do not represent defects of construction but the result of maladjustment and deliberate maltreatment and improper and not intended use."

[9] In the opinion of the court in banc, it is said: "The first question stated by the exceptants and raised now for the first time by the County of Schuylkill is, 'Was there a common basis or standard of bidding?' and refers to the first of the three contracts involved only."

claim was presented. While appellant frankly states that this issue was not specifically made, it is suggested that a general averment of abuse of discretion in awarding the contracts is sufficiently comprehensive to raise the point. We cannot so consider it. The commissioners had no discretion on the subject; the law required that the same specifications be available to all bidders; if all bidders received the same specifications, all had the same or a common standard by which to bid. Sealed proposals for furnishing the first lot of machines were duly invited to be submitted August 18, 1930; the others on certain days later. The advertisement for the proposals specified that they must be subject to certain specifications on file in the office of the county controller in the courthouse and that a copy would be furnished to each bidder. Only three machines had been approved by the Secretary of the Commonwealth and therefore only three could be the subject of the bids. Of the three, so approved, only two were the subject of proposals: The Automatic Voting Machine Company of Jamestown, New York, and the Poole Engineering & Machine Company submitted proposals; each bidder had the same specifications. The bid of the Poole Company was substantially less than the other bidder's and was accepted. Counsel for the plaintiff-taxpayers stated during the trial that he did not contend that there was abuse of discretion in rejecting the bid of the Automatic Voting Machine Company. The complaint of abuse of discretion is related solely to the acceptance of the Poole Company's bid. In its proposal this company specified delivery as speedily as its manufacturing schedule would permit; the Automatic Company agreed to deliver provided the award was made within three days. The specifications, including the dates for delivery, were general, applicable to all proposals, and provided that they should be made part of the contract. The contract conformed to the proposals and embodies the specifications. No bad faith, collusion or favoritism in connection with

the contracts is charged; there is no evidence that any statutory requirement was omitted.

The brief filed on behalf of the taxpayer, Dr. Fleming, appellant in No. 9, asserts there was abuse of discretion because the Poole Company was not "one of the approved manufacturers." The 14th finding of fact is that the proposal was to furnish an "American Voting Machine," which, in the 10th finding, was found to have been approved by the Secretary of the Commonwealth April 9, 1930. Neither finding was excepted to; the statute did not require the Secretary to approve the manufacturer.

Complaint is also made that the time of delivery was subsequently extended by the commissioners and that when the second and third contracts respectively were awarded the Poole Company was behind in its deliveries on the prior contract. This also is relied on as abuse of discretion. In rejecting the argument, it is sufficient to say that no fraud or collusion was alleged or sought to be proved; and that no reason for differing from the learned court below on this phase of the case has been suggested: compare *McKallip v. Altoona*, 265 Pa. 192, 108 A. 408; *Glover v. Phila.*, 304 Pa. 466, 470, 155 A. 862. In *Terre-Haute Co. v. Nelson*, 130 Ind. 258, 27 N. E. 486, it is said "that in the absence of fraud, the time for the completion of a street improvement under a contract may be lawfully extended by a vote of the common council." See also *Paving Co. v. Tacoma*, 78 Wash. 292. The answer of Commissioner Kirschner averred that the extensions were granted with the consent of the sureties.

We shall not refer specifically to other averments suggested as possible support for the argument of abuse of discretion. The subject is dealt with at length in the reported opinions of the learned court below already referred to. To the suggestion that a bank cashier's check accompanied the proposal instead of a certified check, as the specifications required, it is perhaps sufficient to

say that the refusal to sustain exceptions to the findings of fact on the subject is not assigned as error. But it may be added that the learned chancellor pointed out that the requirement of the specifications was made by the Commissioners and was not a requirement of the statute, thus distinguishing cases cited in which the provision is statutory and must be complied with. Immaterial departures are not ground for setting aside the contracts: *Brener v. Phila.*, 305 Pa. 182, 187, 157 A. 466. For the same reason other objections of the same kind must be dismissed.

To support their argument that the machines did not meet the specifications, appellants say that the direction in the decree requiring the Poole Company to make certain changes or additions to the machines is "so manifestly inconsistent with the findings of the chancellor as to show error therein." Harris, one of the custodians of voting machines for the county, testified that when they were delivered, he examined them and checked the accompanying equipment and that no parts were broken or missing. After their delivery, the Secretary of the Commonwealth again had them examined by his examiners on December 2, 1931, and required certain additions, as he was empowered to do by the Voting Machine Act of 1929 as amended June 23, 1931, after these machines had been delivered. He again issued a certificate supplemental to that which he had originally issued. The Poole Company promptly indicated a willingness to make the suggested changes at its own cost (cf. *Glover v. Phila.*, supra). The fact that changes or additions were required by the decree does not, as appellants contend, determine that the machines delivered were not in accord with the contract and specifications. Machines once delivered (though approved) were subject to reëxamination. The statute authorized the Secretary of the Commonwealth to reëxamine voting machines throughout the State and to require changes, etc., of the character specified in the statute; the Secretary's power

originally conferred was enlarged: Act of June 23, 1931, P. L. 1185. The findings of fact require the rejection of appellants' contention on this phase of the case. Among them was a direct finding (the 49th) that all the machines delivered had the approval of the Secretary when the contracts were awarded, when they were executed and when the machines were delivered. There is also a finding (the 93d) that after the machines were delivered, the Secretary, on January 12, 1932, notified the Poole Company that the machines furnished were defective "under the terms of a new certificate issued by him on December 2, 1931," and requiring them to "be reconditioned in accordance with said certificate which was based not only upon the requirements of the Voting Machine Act of 1929, but also the amendatory [Act] of June 23, 1931." On this subject the decree ordered the Poole Company "(1) To proceed with all expedition and without delay or excuse and recondition, without cost or expense to the County of Schuylkill, the 245 American Voting Machines, purchased by the County of Schuylkill from the Poole Engineering and Machine Company, in full conformity with the following requirements as contained in the re-approval certificate of the Secretary of the Commonwealth of Pennsylvania under date of December 3, 1931, to wit: (a) Directions for resetting the ratchet at the left end of the machine must be printed and pasted on circular cover so as to be available to the Judge of Election, or other person authorized to remove same when it becomes necessary when machine fails to function when operated manually. (b) A hook used during electrical operation of the machine, which fell causing damage and delay, must be so held in place that possibility of such occurrence is negative. (c) Lock washers must be provided to prevent screws holding voting buttons from backing out. (d) A 'T square' or other similar suitable device must be furnished as part of the equipment of each machine to be used in identifying irregular ballots on the irregular ballot sheet. (2) In like

manner to furnish and attach dashpots to each of the said 245 American Voting Machines, at the top of each candidate column or row in the vote wedge rack."

Quoted, above, is the statement of the learned chancellor that, if called upon to consider alleged failure to comply with specifications, in a number of respects stated, he would have been obliged by the evidence to find that the complaints were not well founded. Objections are also based on testimony of election officers that, out of 55 machines used, some did not work, as they were expected to, at the Primary Election; it was agreed that some of them worked satisfactorily. But the following findings are conclusive: "81. The voting machines purchased by and delivered to the County of Schuylkill will perform efficiently the intended use and purpose at elections if properly adjusted and rightfully used according to the printed instructions for the use, care and preparation of the machines for election purposes." "82. The tests and manipulations of the two machines in court by the plaintiffs' expert as well as the evidence of difficulty in the use of the machines at the polls in the Primary of 1931, did not exhibit structural defects and faulty design, but maladjustments and wrongful operation." "70. The machines meet the requirements of subdivision (o) of the general specifications in that when they are properly operated they register or record correctly and accurately every vote cast." "78. The electrical equipment of the voting machines functioned when properly adjusted."[10] In referring to alleged failures

[10] In his adjudication the learned chancellor said: "But, he who seeks equity must do equity. Hence, we will order and direct the Receivers of the Poole Engineering and Machine Company to recondition the machines in conformity with the Act of 1931, amending the Voting Machine Act of 1929, and the requirements of the approval certificate of December 3, 1931, of the Secretary of the Commonwealth, as they had offered to do and also to add the improvement of dashpots to each machine as they claimed the right to do under the 5th paragraph of the contracts. Such a disposition

44

of machines in the Primary Election of 1931 he added: ". . . each . . . [failure] is conclusively shown to be due to wrongful preparation or adjustment of the machine for election purposes and failure on the part of the voter to follow the instructions for operation provided by the manufacturers. The demonstrations of plaintiffs' expert were possible through purposed maladjustment, intentional lack of machine preparation, violent interference with the mechanism, and an expert's design to interrupt the normal functions of the machine or misuse some parts of the voting mechanism." These conclusions are supported by evidence. While we have some difficulty in appreciating from the printed record the exact significance of portions of the evidence of the experts' demonstrations of the working of the machines as exhibited at the trial, we know that the learned chancellor witnessed the demonstrations, had the machines before him and participated in the examinations; he is therefore more qualified than we are to pass on the character and result of the examinations and the prejudice and credibility of the expert witnesses, and as nothing has been shown in argument to require otherwise, we accept his conclusions.

Other contentions were presented which we have considered in the light of the arguments presented, but deem it unnecessary to set forth at length; we find nothing reversible. In view of the conclusion already reached

is eminently fair, equitable and right under the law and the evidence of the case." The 5th paragraph of the contract was as follows: "Fifth: The party of the second part agrees that it will, at its own expense and without any cost whatsoever to the County of Schuylkill, alter, repair, add or replace any and all imperfections or defects in material or workmanship in said machines, provided said machines shall be reasonably properly cared for, and provided such alterations, repairs, additions or replacements are not rendered necessary because of the elements, water, fire, or through careless or malicious handling or treatment.

■■■ 45

on the merits, it is unnecessary to refer to other grounds relied on by the appellee.

The decree is affirmed, costs to be paid by Schuylkill County, as the court below has ordered.