## ALLEGHENY COUNTY, PA., v. MARYLAND CASUALTY CO.

### No. 8788.

District Court, W. D. Pennsylvania.
Oct. 28, 1941.

See, also, 32 F.Supp. 297.

Edward G. Bothwell and Harry V. Bair, Asst. Co. Sol., both of Pittsburgh, Pa., for plaintiff.

Oliver K. Eaton, of Pittsburgh, Pa., and Duane R. Dills and Jack J. Levinson, both of New York City, for defendant.

GIBSON, District Judge.

After verdict for plaintiff the defendant has moved for judgment upon its reserved

point for binding instructions and, in event of refusal, for a new trial.

The action was brought by the County of Allegheny (hereafter called County) against the Maryland Casualty Company (called Maryland hereafter), which was surety for the Poole Engineering & Machine Company (called Poole hereafter) for the performance of its contract for the delivery of some 1100 voting machines to the County. The contract was dated March 26, 1931.

The defendant has based its action for judgment chiefly upon two propositions. The first, in substance, is that the defendant is not liable because the plaintiff, having accepted the voting machines, failed to give notice to Poole (with whom defendant as surety was in privity) of any breach of any promise or warranty within a reasonable time after it knew, or ought to have known, of such breach, as required by Section 49 of the Uniform Sales Act, 69 P.S.Pa. § 259. Its second proposition is to the effect that the subject matter of the suit, so far as it relates to alleged breaches of Articles 1 to 10 of the specifications of the contract between the County and Poole, was res judicata, and that no evidence existed as to alleged breaches of Article 12.

■ As to the first of these propositions it would seem that the matter was properly submitted to the jury. The plaintiff, it is true, gave its first notice to Poole, also to defendant, on June 16, 1932, and then only mentioned some six alleged unimportant imperfections. This notice was nine months after delivery of the machines and after they had been used in the election of 1931. However, it was asserted on behalf of plaintiff that the defects were latent and discoverable only with difficulty and after considerable investigation. On January 18, 1932, Poole had been adjudicated a bankrupt, and thereafter ceased all business activities. Notice was given defendant (although not required by the bond) of the defects which were called to Poole's attention on June 16, 1932, and to that notice defendant replied, denying any liability. Under these circumstances plaintiff claimed that any further notification of defects was useless and not required by Section 49 of the Uniform Sales Act. In the charge the court called the provisions of that section to the attention of the jury, but stated that notice was not required if the circumstances showed that it would be a vain act to give it. Whether or not notice in the instant case would have been useless was submitted to the jury.

The claim of res judicata requires much more serious consideration.

The voting machines delivered to Allegheny County were exactly the same in their mechanism as machines furnished Schuylkill and Northumberland Counties. In each of the three counties named litigation followed the delivery. Except that the Allegheny County contract had a specification binding Poole to "alterations, repairs or replacements" for a period of five years after delivery, the specifications were identical and followed the Pennsylvania Act of 1929, P.L. 549, which authorized the use of voting machines and prescribed their requirements. In each suit the issue was whether the machines furnished complied with the specifications.

In Schuylkill County a taxpayer filed a bill in equity against the County Commissioners wherein the court was asked to restrain the payment of the purchase price of the machines to Poole. The chancellor decided that the machines reasonably met the specifications. The Supreme Court of Pennsylvania affirmed his judgment. See Fleming v. Adamson et al., 321 Pa. 28, 182 A. 518.

In Northumberland County a taxpayer filed a like bill against the County officers. This bill was later withdrawn and Poole (by Manley, its trustee in bankruptcy) brought suit in the District Court of the Middle District of Pennsylvania to recover the purchase price, and was successful before a jury.

The County of Allegheny was not a party in the Schuylkill and Northumberland County suits, and we are interested in them only as they set forth the interpretation of the Pennsylvania courts of the Acts of 1929 and 1931, and the specifications prescribed therein. The Allegheny County case, Bassett et al. v. Armstrong et al., 309 Pa. 296, 163 A. 525, is more material, and is the foundation of the defendant's claim. That case was instituted by taxpayers against the then County Commissioners, the County Controller, the County Treasurer and Poole, to attempt to enjoin the payment to Poole of the unpaid part of the purchase price of the machines. The complaint charged generally that the machines furnished were ineffective and unfit for use by the electorate of the County and set forth a number of the specifications which, it was averred, had not been met by them. The case was

tried before a judge of the Court of Common Pleas, who, after hearing the evidence offered by the taxpayers, dismissed their bill. Exceptions were filed to his action, and later heard before three judges, who affirmed the judgment. An appeal to the Pennsylvania Supreme Court was filed, and the judgment was later affirmed by it. Bassett v. Armstrong, supra. The main issue in the case was upon the taxpayers' assertion that the machines were defective and did not meet the specifications of the contract with Poole or of requirements of the Act of Assembly.

Against this apparent judgment that the voting machines furnished by Poole were in compliance with the contract counsel for the County has advanced three propositions. He declares, first, that the judgment in Bassett v. Armstrong, supra, was not a final judgment, but only the equivalent of a non-suit at law; second, that the County is not bound by the judgment because the action did not involve the County as a legal entity, but only its officers; and third, by reason of the latent nature of the defects in the machines, many of them were not discovered when the suit was entered, and therefore not included in the complaint setting forth non-compliance with the specifications.

■ The first proposition of counsel does not seem to be sound. Had the case ended with the dismissal of the action by the trial judge, the dismissal would have had the effect of a non-suit under the Pennsylvania Equity Rules; but the suit did not end with the dismissal. Exceptions were filed, and later adopted by the County Commissioners of the County; and heard before the court en banc, which overruled the exceptions and affirmed "the order made on November 29, 1931, dismissing the bill, on the opinion filed by the Chancellor". The opinion contained a finding of fact to the effect that the machines were efficient and conformed to the requirements of the contract. One of the exceptions to the action of the court in dismissing the bill was directed to such finding of fact. In the opinion of the Supreme Court this finding was recognized as such. Under these circumstances, counsel's contention that the judgment had only the effect of a non-suit is not sound. His position partly ignores the facts, as detailed, as to exceptions and judgment and places undue stress upon certain declarations in the opinion of the Supreme Court to the effect that the matter had become moot, as the purchase price of the machines had been then paid to Poole pursuant to the order in mandamus proceeding brought by Poole's trustee in bankruptcy against the treasurer of the County and its controller. The judgment of the lower court, not having been reversed, still exists. Altsman v. Kelly, 336 Pa. 481, 488, 9 A.2d 423. By that judgment the voting machines were declared to have no inherent defect and were efficient for their intended purpose.

We come then to plaintiff's second proposition, that the County of Allegheny was not a party to Bassett v. Armstrong, supra, and not affected by the judgment in it. Its counsel contends that the County, being a legal entity, may be bound only by an action brought by or against it as such, and not by any suit against its Commissioners as such.

In this connection we quote from Hochman v. Mortgage Finance Corporation, 289 Pa. 260, 137 A. 252, 253: "It is a general principle of public policy, making for the general welfare, for the certainty of individual rights, and for the dignity and respect of judicial proceedings, that the doctrine of res adjudicata should be supported, maintained, and applied in proper cases. Nor should its application be restricted by technical requirements, but a broad view should be taken of the subject, having always in mind the actual purpose to be attained. The rule should not be defeated by minor differences of form, parties, or allegations, when these are contrived only to obscure the real purpose—a second trial on the same cause between the same parties. The thing which the court will consider is whether the ultimate and controlling issues have been decided in a prior proceeding in which the present parties actually had an opportunity to appear and assert their rights. If this be the fact, then the matter ought not to be litigated again, nor should the parties, by a shuffling of plaintiffs on the record, or by change in the character of the relief sought, be permitted to nullify the rule. This is a universal rule, and is well stated by our present Chief Justice in State Hospital v. Consolidated Water Co., 267 Pa. 29, 37, 110 A. 281. The requirements for the application of the rule are that there be an identity of parties and of subject-matter in the two actions. The first of these requirements being present, all issues that were actually adjudicated in the former action are concluded (Bowers' Estate, 240 Pa. 388, 87 A. 711; First National Bank of Wrightsville v. Dissinger, 266 Pa. 349, 109 A. 626) ; and,

if the whole cause of action in the second case is the same as in the first, not only the issues actually adjudicated in the first proceeding, but also those which might have been raised and passed upon, are concluded. If, then, the issues in the present case could have entered into the determination of the first case, they should have been presented; and, if they were omitted for any cause, the judgment or decree entered thereon is conclusive between the parties or their privies. See Morrett v. Fire Association, 265 Pa. 9, 12, 13, 108 A. 171."

■ At the inception of Bassett v. Armstrong, Poole and the County Commissioners were joined as defendants, and continued as defendants, although their connection with the case was not from the same angle, until the appeal to the Supreme Court. Even before the exceptions to the chancellor's action were heard by the court en banc the original County Commissioners had been replaced by other Commissioners who, after formal resolution of the Board of Commissioners, filed a petition in the Supreme Court which, being granted, changed them from defendants to plaintiffs; and in that change they specifically sought the reversal of the chancellor's finding that the machines were fit for use. In the said petition the successor Commissioners prayed for an order of restitution of the purchase price of the machines which had then been paid Poole, thus indicating that they were appearing, not personally, but as the representatives of the County whose duty it was to appear for it in all actions brought by or against it. But even if this realignment of parties had not occurred, a court of equity, having taken jurisdiction, has the power over the entire controversy and is not bound in its decree by the alignment of parties in the pleadings. Fleming v. Adamson, 321 Pa. 286, 32, 182 A. 518.

In this connection we repeat from the opinion in Hochman v. Mortgage Finance Corporation, quoted at greater length, supra:

"The rule [res judicata] should not be defeated by minor differences of form, parties, or allegations, when these are contrived only to obscure the real purpose—a second trial on the same cause between the same parties.

*    *    •    *    *    *

" And, if the whole cause of action in the second case is the same as in the first, not only the issues actually adjudicated in the first proceeding, but also those which might have been raised and passed upon, are concluded. If, then, the issues in the present case could have entered into the determination of the first case, they should have been presented; and, if they were omitted for any cause, the judgment or decree entered thereon is conclusive between the parties or their privities."

■ The County Commissioners, by statute, had the duty of appearing for the County in all suits, and, also by statute, the County Solicitor had the duty of representing the County as its counsel in such suits. These officers appeared in Bassett v. Armstrong, not as persons individually interested in the matter, but as representatives and agents of the County. As to knowledge of the suit and its issues, they were more than in mere privity with the County, they were the County in everything but name. See United States National Bank of Portland v. Union National Bank of Philadelphia, 268 Pa. 147, 156, 157, 110 A. 792, 794: "Where the issues, necessary to a determination of the governing point are to be adjudicated, matters appropriate to the trial, either in affirmance of the right or in defense of the action, which may be then properly considered, must be presented and passed upon in that case. The formal judicial determination of the governing point as then presented is conclusive between the parties and those legally bound thereby, and all facts relative to the matter at issue which may be there passed upon, or which could have been passed upon, to sustain or defeat the claim, may be said to be judicially ascertained or determined. In such case res adjudicata is a bar to subsequent litigation between the same parties over the same subject-matter (see State Hospital for Criminal Insane v. Consolidated Water Supply Co. [267 Pa. 29], 110 A. 281, opinion by Moschzisker, J., filed April 12, 1920), and in this case would bind the principal, who knew of and had an opportunity to defend the action. While there may be no privity of estate between the principal and agent, where an agent defends on his principal's title (in this case the right to retain the funds where the defendant's position has been altered for the worse), or is acting within the scope of the authority conferred on him, or if the principal was represented, or should have been by notice or knowledge of the litigation, or actually conducted the suit, though not a party of record, the principal is concluded by the judgment, and it may be used as evidence for

or against him in subsequent actions. 23 Cyc. 1245, 1265; 2 Black on Judgments (2d Ed.), § 578; 24 A. & E. Enc. of Law 751."

Under the case last cited, and numerous others to the like effect, it seems obvious that the County may not meet defendant's claim of res judicata by pointing to the fact that Allegheny County was not, by its name, a party to the action.

■ The claim of res judicata, however, does not apply to Number 12 of the specifications of the contract of sale. By that article Poole agreed to repair the machines and replace defective parts for a period of five years. In the Supreme Court opinion in Bassett v. Armstrong this specification is mentioned, although not by its number. The opinion seems to assume that further procedure under Articles 1 to 10 was not possible by reason of its judgment, but that action under the repair and replacement covenant was open in event of failure of Poole to comply with the specification. In its complaint plaintiff has pleaded failure of Poole to perform under the specification in very general terms, without pointing out such failure and then proceeds to claim damages, not for repair and replacement but for "extensive experimental work on said machines", and because it was "obliged to and did redesign and reconstruct them." The words "repair" and "replace", in covenants such as that between Poole and the County, have a definite meaning. They contemplate a restoration to the original condition, and not to the employment of experts to experiment with and redesign and reconstruct. We have examined the testimony with some care and have found in it no expense to the County claimed for the restoration or repair of any ailing part. Claims are for expense of research and reconstruction amounting in cost to almost the equivalent of the original purchase price. This being so, our present inquiry is confined to alleged breaches of Specifications 1 to 10.

■ We come next to the matter of latency of many alleged breaches of the specifications. That a number of the possible manipulations of the machines exhibited to the jury as breaches of the specifications were not discoverable upon less than an extensive examination is quite apparent. They escaped the notice of the Secretary of the Commonwealth of Pennsylvania who, with the aid of two experts in mechanics, twice examined the machines and certified them for use by the electorate of Pennsylvania. As exhibited, the alleged defects were not only not easily discoverable by one not an expert mechanic, but were not capable of operation by one not such an expert. At the same time, however, it must be said that the testimony seems to indicate that not many of the matters alleged as breaches of the specifications were not known when Bassett v. Armstrong was before the Supreme Court. The testimony of plaintiff was to the general effect that the defects were not easily discoverable, but the date of discovery of any such defect does not appear. If it be considered that certain of the breaches claimed by plaintiff were latent and had not been discovered immediately after delivery of the machines, what is the effect of that fact? It might well serve as an excuse for failure to notify the vendor of defects in the machines under the terms of Section 49 of the Sales Act, prior to their discovery; but a different situation exists where the main issue, compliance with the contract, has been submitted to, and finally decided by, courts of competent jurisdiction. If such judgments were to be set aside upon claim of after-discovered evidence, without allegation of fraud or its equivalent, they would have a very precarious existence and the res judicata rule would have only theoretical standing. Not what was offered, but what was admissible, controls the issue.

Being of opinion that the defendant, in privity with the Poole Company, was entitled to rely upon the judgment in favor of Poole in Bassett v. Armstrong, supra, the court will enter judgment in its favor notwithstanding the verdict.